## DELANO *v.* BUTLER, Receiver.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

## SAME *v.* SAME.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Argued October 12, 13, 1886.—Decided November 1, 1886.

In September, 1881, A held thirty shares of stock in a national bank whose capital was $500,000, with a right to increase it to $1,000,000. In that month the directors voted to increase the capital to $1,000,000, the persons then holding stock to have the right to take new stock at par in equal

amounts to that then held by them. A then subscribed for thirty additional shares, paid for it three days later, and subsequently took out a certificate of stock for it. The amount of increased capital subscribed and paid for was $461,300, instead of $500,000, but A had no knowledge of this deficiency until after the payment of said subscription, and of the assessment hereinafter referred to. On the 18th November, 1881, the bank became insolvent, and an examiner was placed in charge of it by the Comptroller of the Currency. In December, 1881, the directors cancelled the increase of stock above said sum of $461,300, and requested the Comptroller to issue a certificate for the increase as so reduced, which he did. No vote of the stockholders was taken either on the increase or decrease. The Comptroller then, under § 5205 Rev. Stat., called upon the bank for an assessment of 100 per centum on the holders of stock, to pay the deficiency in the capital stock. In January, 1882, the annual meeting of the stockholders was held, at which it was voted to levy the assessment so called for, whereupon the Comptroller permitted the directors to resume control of the bank. A, being notified of this assessment, paid the amount assessed upon his sixty shares, upon being assured by one of the directors of the bank that there would be no other assessment. On the twentieth day of the following May the bank ceased to do business, and the directors thereupon voted to go into liquidation. The Comptroller then appointed a receiver of the bank. In November, 1882, the Comptroller, under Rev. Stat. § 5151, made an assessment on the shareholders of 100 per cent. of the stock held by them respectively. A declining to pay, the receiver brought an action at law against him to recover that amount on the sixty shares standing in his name. A thereupon filed a bill in equity to restrain the prosecution of the action. *Held :*

(1.) That the increase of the capital stock of the company to $961,300 was valid.

(2.) That this increase was binding on A to the extent to which he paid for and received certificates of increased stock.

(3.) That the payments made in January, 1882, could not be applied, either at law or in equity, to the discharge of the assessments made by the Comptroller in the final liquidation of the bank.

(4.) That the payment was not made by A under a mistake against which equity can relieve him.

The following is the case, as stated by the court.

The first of these cases was an action at law brought in the Circuit Court of the United States for the District of Massachusetts, by Linus M. Price, as Receiver of the Pacific National Bank of Boston, for whom Peter Butler has been substituted, against John P. Delano, a citizen of Bath, Maine, to enforce the personal liability of the defendant, under Rev.

Stat. § 5151, upon an assessment of 100 per centum of the par value of sixty shares of the capital stock of the Pacific National Bank, alleged to be held and owned by said Delano at the time of the insolvency and suspension of said bank.

The Pacific National Bank was duly organized and authorized to do business as a national bank, under the provisions embraced in Title 62 of the Revised Statutes of the United States, and located in Boston, in October, 1877. Its capital stock was fixed at $500,000, paid in cash, with a right to increase it to $1,000,000. It continued business on this basis until September 13, 1881, when, as appears by the records of a meeting of the directors held in Boston, it was—

"Voted, That the capital of this bank be increased to one million dollars, and that stockholders of this date have the right to take the new stock at par in equal amounts to that now held by them."

On the same date, a copy of the following notice was sent by the cashier to each stockholder of the bank:

"A. I. Benyon, President.      J. M. Pettingill, Cashier.
    PACIFIC NATIONAL BANK, 105 DEVONSHIRE STREET,
                                    BOSTON, *Sept.* 13, 1881.
"At a meeting of the directors of this bank, held this day, it was—

"'Voted, That the capital of this bank be increased to one million dollars, and that stockholders of this date have the right to take the new stock at par in equal amounts to that now held by them.'

"Subscription to the new stock will be payable October 1st. Parties desiring to anticipate payment will be allowed interest to that date at four per cent. per annum.
                            "J. M. PETTINGILL, *Cashier.*"

The whole amount of the increase of capital voted was not taken and paid in, nor was notice ever transmitted to the Comptroller of the Currency that all of such increase had been paid in; nor was that official's certificate of the increase to

$1,000,000, with his approval thereof; ever issued. But $461,300 of the proposed increase of $500,000 was actually subscribed for and paid in as capital stock prior to November 18, 1881, and was used in the general business of the bank.

On November 18, 1881, the bank became insolvent, suspended payment, and closed its doors. On the same day, Daniel Needham, an examiner of national banks, was placed by the Comptroller of the Currency in charge of the assets of the bank, for the purpose of ascertaining its condition, where he remained until March 18, 1882.

The directors of the bank met on December 13, 1881, during the period of suspension, and passed a vote that, as $38,700 of the increase of capital voted on September 13, 1881, had not been taken and paid in, that amount be cancelled and deducted from the capital stock of $1,000,000, and the paid-up capital stock fixed at $961,300; and that the Comptroller of the Currency be notified of the increase of $461,300, which had been paid in, and requested to issue a certificate of such increase according to law.

Thereupon the Comptroller of the Currency, under date of December 16, 1881, made and issued the following certificate:

"TREASURY DEPARTMENT,

"OFFICE OF COMPTROLLER OF THE CURRENCY,

WASHINGTON, *Dec.* 16, 1881.

"Whereas satisfactory notice has been transmitted to the Comptroller of the Currency that the capital stock of 'The Pacific National Bank of Boston, Mass.,' has been increased in the sum of four hundred and sixty-one thousand three hundred dollars, in accordance with the provisions of its articles of association, and that the whole amount of such increase has been paid in:

"Now, it is hereby certified that the capital stock of 'The Pacific National Bank of Boston, Mass.,' aforesaid, has been increased as aforesaid, in the sum of four hundred and sixty-one thousand three hundred dollars; that said increase of capital has been paid into said bank as a part of the capital

stock thereof, and that the said increase of capital is approved by the Comptroller of the Currency.

"In witness whereof I hereunto affix my official signature.

[SEAL.] "JOHN J. KNOX, *Comptroller.*"

No vote of the stockholders was taken relating to the increase or decrease of the capital stock of the bank.

Under date of December 16, 1881, the Comptroller of the Currency addressed the following letter to the bank:

"WASHINGTON, *December* 16, 1881.

"The Pacific National Bank of Boston, Massachusetts:

"The entire capital stock of the Pacific National Bank of Boston, Massachusetts, amounting to nine hundred and sixty-one thousand three hundred (961,300) dollars, having been lost, notice is hereby given to said bank, under the provisions of section 5205 of the Revised Statutes of the United States, to pay the deficiency in its capital stock by an assessment of one hundred (100) per cent. upon its shareholders *pro rata* for the amount of capital stock held by each, and that if such deficiency shall not be paid, and said bank shall refuse to go into liquidation, as provided by law, for three months after this notice shall have been received by it, a receiver may be appointed to close up the business of the association according to the provisions of section 5234 of the Revised Statutes of the United States.

"In testimony whereof I have hereto subscribed my name and caused my seal of office to be affixed to these presents, at the Treasury Department, in the city of Washington and District of Columbia, this sixteenth day of December, A.D. 1881.

[SEAL.] "JOHN JAY KNOX,
"*Comptroller of the Currency.*"

On January 10, 1882, during the suspension of the bank, the stockholders held their annual meeting (it being the first held since January 11, 1881), pursuant to the following notice duly published in the Boston Daily Advertiser:

*" Pacific National Bank.*

" The annual meeting of the stockholders of this bank for choice of directors, and for any other business that may legally come before them, will be held at their banking rooms, 105 Devonshire Street, on Tuesday, Jan. 10, 1882, at 11 o'clock, A M.

" J. M. PETTINGILL, *Cashier.*"

At this meeting, after discussing the general condition of the affairs of the bank, the foregoing call of the Comptroller of the Currency for an assessment of 100 per centum on the capital stock of the bank was read. Thereupon the following was offered :

" Voted, In accordance with the notice of the Comptroller of the Currency, dated December 16, 1881, there be, and hereby is, laid an assessment of one hundred per cent. upon the shareholders of the Pacific National Bank, of Boston, Mass., *pro rata* for the amount of capital stock of said bank held by each shareholder.

" Voted, That the board of directors notify each shareholder of said assessment and collect the same forthwith."

On the question of the adoption of the above, a stock vote was ordered; the total number of votes cast was 5549, representing 5549 shares, of which 5494 were in the affirmative, and 55 in the negative.

The amount paid in by the stockholders on this assessment was $742,800, prior to May 20, 1882.

The following notice to depositors was issued by the bank on March 16, 1882 :

" THE PACIFIC NATIONAL BANK,
" BOSTON, *March* 16, 1882.

" To our Depositors :

" By vote of the directors and the approval of the Comptroller of the Currency the bank will reopen for business on Saturday, the 18th. Every effort has been made to put the bank again into a sound and solvent condition, and the stockholders have been called upon to pay an assessment of 100 per cent. on their stock, thus making the depositors' balances secure

and available. The bank will be run on strict business principles and in the interest of its customers and stockholders, and, while thanking you for past favors, we solicit your confidence and support for the future.

"Lewis Coleman, *President.*
"E. C. Whitney, *Cashier.*"

Pursuant thereto, the directors resumed active control of the bank and its assets on March 18, 1882, and again conducted a general banking business until May 20, 1882, when the bank ceased business, and the directors voted to go into liquidation. Thereupon Linus M. Price was appointed receiver by the Comptroller of the Currency, under Rev. Stat. § 5234, and took charge of the assets and records of the bank.

During the period between March 18, 1882, and May 20, 1882, while the bank was carrying on business in its own name, the amount due depositors was reduced from $4,101,365.91 on the former date, to $2,052,957.82 on the latter; $62,693.40 being due to new depositors. The amount of deposits made between the dates named was $2,338,617.21. New liabilities were contracted subsequent to March 18, 1882, amounting to $200,000, including the $62,693.40 due to new depositors.

The plaintiff in error owned thirty shares of stock in said bank prior to the vote of September 13, 1881, to increase the stock to $1,000,000. After that vote he received from the cashier of the bank a printed copy of the notice dated September 13, 1881, at the bottom of which he wrote a subscription for thirty shares of the increase of stock, and returned it to the bank. Three days after the passage of the vote he paid $3000 for the thirty shares so subscribed, and received a receipt for $3000 " on account of subscription to new stock," signed by the cashier of the bank. In October he returned the receipt to the bank, and received for it certificate No. 780 for thirty shares of the new stock, dated October 1, 1881.

Plaintiff in error supposed at that time that the whole $500,000 increase of capital had been taken and paid in, and believed that the increase to $1,000,000 had been regularly and legally made. He did not attend the stockholders' meet-

ing of January 10, 1882, and received no other notice thereof than seeing th.) call published in the Boston Advertiser. On January 12th or 13th he received notice of the assessment of 100 per centum upon the stock of the bank, and, after consultation, was assured by another shareholder and a director of the bank that if this was paid there could be no further assessment made on his stock; in consequence of which assurances he paid the assessments of $3000 on January 20th and $3000 on January 23d, which were endorsed on the certificates under the dates of payment, being 100 per centum on sixty shares of stock.

Upon the trial the intervention of a jury was waived by consent of parties, and the cause submitted to the court, which found the foregoing facts, and rendered judgment September 8, 1885, in favor of the receiver, for the amount claimed.

On June 8, 1885, the appellant, Delano, filed a bill in equity in the Circuit Court of the United States for the District of Massachusetts, against Linus M. Price, Receiver of the Pacific National Bank, the object and prayer of which were to enjoin the further prosecution of the pending action at law, brought by the said receiver against him for the purpose of enforcing the alleged liability of the appellant on account of the assessment upon his said stock, on the ground that upon the facts as heretofore stated the voluntary payment made by the appellant of the 100 per centum assessed to restore the lost capital of $961,300, and which had been applied to the payment of the creditors of the bank, constituted in equity, if not at law, a complete defence to the claim of the receiver as an extinguishment of his liability upon the assessment sued on.

This cause was heard upon the facts as heretofore stated, and a decree rendered dismissing the bill for want of equity, from which the present appeal was taken and is prosecuted.

*Mr. George F. Hoar* and *Mr. Benjamin N. Johnson*, for plaintiff in error and appellant.

I. The appellant was not a holder of the new stock. He contracted to take new stock in a bank whose capital should be $1,000,000. This agreement imposed no obligation to take shares in a smaller capital. There is a clear distinction in the

statute between the system provided for the original formation of a corporation, and that provided for the increase of its capital.   Rev. Stat. §§ 5133–5141, 5168–5180, 5412.

The appellant's subscription, payment, taking the certificate, and the entry upon the books were mere preparation for or anticipation of the assuming the character of stockholder, when the whole amount should be subscribed, and the approval and certificate of the Comptroller obtained.   They conferred no right and imposed no duty upon appellant, except to become a stockholder when the increase became valid, and imposed no obligation upon the bank except to admit him as a stockholder when the proceeding was complete.   If the Comptroller had withheld his approval altogether, appellant could not have been held as a shareholder, for the single purpose of liability to previous debts and for no other purpose whatever.   *American Tube Works* v. *Boston Machine Co.*, 139 Mass. 5; *Reed* v. *Boston Machine Co.*, 141 Mass. 454.   Acts of stockholders, until the certificate of the Comptroller, are nothing more than propositions among themselves.   *Charleston* v. *People's Bank*, 5 Rich. (S. C)., 103.   See also *Scovill* v. *Thayer*, 105 U. S. 143, where it is held that in such case an alleged stockholder is not estopped by receiving certificates, attending corporate meetings, or by the fact that the corporation had held itself out as having increased capital, and so obtained increased credit.   *Upton* v. *Tribilcock*, 91 U. S. 45; *Sanger* v. *Upton*, 91 U. S. 56; *Webster* v. *Upton*, 91 U. S. 65; and *Pullman* v. *Upton*, 96 U. S. 328, deal only with the case of subscriptions obtained by fraud, or stock which the corporation had a right to issue, but issued irregularly, or stock *de facto* in corporations irregularly organized.

The certificate and entry in the stock-book must purport to be shares in some specific capital.   If it were essential to our argument, we should respectfully ask the court to reconsider the dictum of Mr. Justice Hunt, in *Chubb* v. *Upton*, 95 U. S. 665, 668, that " it is not necessary, to sustain the action against a subscriber, that there should have been a subscription for the whole amount named in the articles."   If this be true to any extent, we conceive it can be only true in cases where a cor-

poration has begun business lawfully, and might lawfully have limited its increase to the amount actually subscribed without the assent of any other authority, so that the subscriber would become a shareholder in a going concern, and where the circumstances attending the issue of the certificates immediately show that to have been the intent of the parties. See cases collected in 1 Morawetz, Private Corporations, § 142; *Rensselaer & Washington Plank Road* v. *Wetsel*, 21 Barb. 56.

But the present case is as if the subscription paper had itself contained the express condition that the bank would not admit the subscriber to the character of stockholder until the whole amount should be subscribed. *Troy & Greenfield Railroad* v. *Newton*, 8 Gray, 596; *Worcester & Nashua Railroad* v. *Hinds*, 8 Cush. 110; *City Hotel* v. *Dickinson*, 6 Gray, 586; *Boston, Barre & Gardner Railroad* v. *Wellington*, 113 Mass. 79; *Boston & Albany Railroad* v. *Pearson*, 128 Mass. 445. Creditors, in dealing with corporations, are bound to take notice of the limitations of their charters, and, *a fortiori*, of the limitations of the general law. *Scovill* v. *Thayer*, 105 U. S. 143; *Pearce* v. *Madison & Indianapolis Railroad*, 21 How. 441; *In re County Life Assurance Co.*, L. R., 5 Ch. App. 288. The book produced by the receiver is not a stock register. It is a mere debit and credit account with the stockholder. *Worcester Mut. Ins. Co.* v. *Hastings*, 2 Allen, 398.

We come then to the action of the directors of December 13, 1881, and the two certificates of the Comptroller, dated December 16, 1881. The bank then was wholly insolvent. Its capital was entirely gone, and its liabilities were more than three million dollars in excess of its capital and assets. It failed to redeem its circulating notes, or to pay debts or depositors in the course of business. Its doors were closed; its officers were excluded from all control of its affairs by the order of the Comptroller. Needham, the bank examiner, although not styled receiver in the order, was in fact executing the functions of receiver, and not of visitor or examiner, so far as his custody and control of the bank were concerned. Rev. Stat. §§ 5240, 5241. This was a clear case of insolvency, and these were clear acts of insolvency within the meaning of Rev. Stat. § 5242.

They were due and public notice to every shareholder and creditor that the power of the bank to deal in any manner with its assets, except to preserve them and to redeem bills, was gone. It could make no binding contract; even a seizure and sale of its property on an adversary suit would be void. *National Bank* v. *Colby*, 21 Wall. 609. The purpose to violate the provisions of § 5242 would be inferred as matter of law from any payment or transfer of the property under these circumstances, and notice of such purpose be imputed to both parties. Such being the case, the directors had no power to pass the vote fixing the capital at $961,300, and that whether the act be treated as an attempted reduction of the capital, which could only be effected by a two thirds vote of the shareholders (§ 5143), or as a new and original attempt to increase.

Nor had the certificates of the Comptroller, one declaring that the new stock was all paid in, the other declaring that it was all gone, and directing an assessment, any validity whatever. The Comptroller is not a judicial officer. He cannot bind any citizen by a decree or judgment. It is true, his certificate is conclusive upon the question whether a bank is duly organized, and upon the question how much of the stockholders' liability needs to be enforced. *Kennedy* v. *Gibson*, 8 Wall. 498; *Bank* v. *Kennedy*, 17 Wall. 19; *Casey* v. *Galli*, 94 U. S. 673; *Sanger* v. *Upton*, 91 U. S. 56. A person who has become a shareholder in a bank so far submits himself to the Comptroller's authority; and the enforcement of this submission is necessary for the due protection of the public. But the Comptroller cannot by his certificate impose upon persons the character of shareholders without their consent. Nor can it be doubted, that, if the Comptroller be about to give such certificate illegally or contrary to the fact, any person who would be aggrieved thereby may have judicial process to restrain him. *United States* v. *Knox*, 102 U. S. 422. If, then, the act of the Comptroller be performed under such circumstances that it is impossible to apply for an injunction in advance, it must be that the facts may be shown in defence, especially in cases where no new rights have attached in consequence of reliance on his action.

II. The liability of all shareholders was equitably discharged by the payment of the assessment. The case at bar is totally distinguishable from *Scovill* v. *Thayer*, 105 U. S. 141. Here money paid under a supposed liability went directly to reduce the volume of debts, as is expressly found by the court, under an assessment made for that sole purpose. The order by the Comptroller, and the voluntary consent by the supposed shareholder, to pay in 100 per cent. on the supposed capital, were an order and consent to pay that amount to the creditors, and actually accomplished that purpose. It was an actual performance of one obligation by parties who mistakenly supposed they were performing another. In form, it was an attempt to make good the capital. In fact, it was simply a reduction of the volume of debt. The entire deficiency was never paid. Pursuant, therefore, to the notice of the Comptroller of December 16, 1881, the receivership therein stated went on. The shareholders paid in voluntarily a sum they were not obliged to pay, with intent that it should be applied to increase a fund to discharge the indebtedness of the bank. It was so applied, and the creditors collectively and individually were thereby in better condition than if the method provided by law had been strictly pursued.

Assuming these facts to be established, we submit that on well-established principles of equity such payment will be treated as a discharge of the statute obligation—either as an equitable performance of it, or as an equitable satisfaction, or as a substituted performance, or as an equitable set-off. It is not important to consider carefully the distinction between them. They all rest upon the general principle that equity will not permit double benefits where but one benefit is intended, or impose double burdens where but one obligation is due. The money due from these debtors has reached these creditors, and the substance of their obligations has been fully performed. *Tubbs* v. *Broadwood*, 2 Russ. & Myl. 487; *Lechmere* v. *Carlisle*, 3 P. Wms. 211; *Sowden* v. *Sowden*, 1 Bro. Ch. 582; *Wilcocks* v. *Wilcocks*, 2 Vernon, 558; *Blandy* v. *Widmore*, 1 P. Wms. 324; *Deacon* v. *Smith*, 3 Atk. 323; *Ex parte Pye*, 18 Ves. 140; *Hinchcliffe* v. *Hinchcliffe*, 3 Ves. 516;

*Thynne* v. *Glengall*, 2 H. L. Cas. 131; *Raleigh* v. *Raleigh*, 35 Ill. 512; *Tallmadge* v. *Fishkill Iron Co.*, 4 Barb. 382; *Jones* v. *Wiltbeyer*, 42 Georgia, 575; *Lee* v. *Lee*, 31 Georgia, 26; *United States* v. *Knox*, 102 U. S. 422; *Bank of Hindustan* v. *Alison*, L. R., 6 C. P. 54; *Marine Bank* v. *Fulton Bank*, 2 Wall. 256; *Scammon* v. *Kimball*, 92 U. S. 370; *National Bank* v. *Insurance Co.*, 104 U. S. 54; *Patterson* v. *Lynde*, 106 U. S. 519; *Smith* v. *Hurd*, 12 Met. (Mass.) 371.

No offer to return the certificates or notice to rescind the transaction was necessary. The transaction never took effect. Nothing ever passed to these alleged stockholders as against the corporation. There was nothing to be avoided or rescinded, and the certificates were of no value so as to need to be returned. *Reed* v. *Boston Machine Co.*, 141 Mass. 454; *American Tube Works* v. *Boston Machine Co.*, 139 Mass. 11.

*Mr. A. A. Ranney*, for defendant in error and appellee.

MR. JUSTICE MATTHEWS, after stating the case as reported above, delivered the opinion of the court.

Section 5151 of the Revised Statutes provides that "the shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

The object of the action at law brought by the receiver of the Pacific National Bank of Boston, in which judgment was rendered against the defendant, the plaintiff in error, was to enforce his liability under that section of the statute. The object of the suit in equity, in which Delano was the complainant, was to restrain the prosecution of the action at law on the ground that, if his legal defences failed, he had in equity performed and extinguished his obligation.

The questions arising upon the records of these cases in various forms, upon the facts already stated, may be reduced to three, which will be considered and disposed of in their order.

The plaintiff in error, in the action at law contends, as grounds for reversing the judgment against him,

1st. That he was not, at the time of the appointment of the receiver, or at any time, the holder of sixty shares of the stock of the Pacific National Bank, but was, in fact and in law, a holder of only thirty shares thereof. He contends that the attempt on the part of the directors and the Comptroller of the Currency, in December, 1881, to fix the capital stock of the bank at $961,300, was contrary to law and void; that the alleged thirty shares of new stock on account of which he is sued never had any legal existence, and that he, by virtue of his subscription in September, 1881, for thirty shares in the then proposed increase of capital from $500,000 to $1,000,000, and by his other acts, never became liable on account of the debts of the Pacific National Bank beyond his liability as the holder of thirty shares of valid stock.

2d. That by his contribution in January, 1882, of an amount equal to the par value of all the stock ever held by him, towards the fund, which was all used in the payment of the debts of the bank, the bank then being insolvent, he in law discharged his liability as a stockholder in said bank, and should, therefore, have judgment in his favor.

3d. As appellant in the suit in equity, Delano alleges, as ground for reversing the decree dismissing his bill, that the contribution made by him on January 23, 1882, of an amount equal to the par value of the stock held by him, towards a fund which was actually used in the payment of the debts of the bank, the bank then being insolvent, constituted in equity a satisfaction and extinguishment of his liability as a stockholder for the debts of the bank, if not at law.

It is further contended by him, as an additional ground for equitable relief, that by the payment of the $3000 upon the thirty shares of alleged new stock, which he claimed never had any legal existence, and on which, therefore, he never incurred any liability, he really contributed towards a fund actually used for the payment of the debts of the bank an amount equal to 200 per centum of the stock held by him, which payment, if not available in his favor as a satisfaction

of his statutory liability technically at law, nevertheless must be regarded in equity as a substantial equivalent, exonerating him from further liability.

The first question to be considered is whether there was a valid increase of the capital stock of the Pacific National Bank, of which the plaintiff in error became the owner of thirty shares, so as to be charged with liability thereon as a stockholder. The articles of association of the bank provide that "the capital may be increased, according to the provisions of section 5142 of the Revised Statutes, to any sum not exceeding ten hundred thousand dollars."

The 11th section of the by-laws of the bank provides as follows:

"Whenever an increase of stock shall be determined upon, it shall be the duty of the board to notify all the stockholders of the same, and cause a subscription to be opened for such increase, and each stockholder shall have the privilege of subscribing for such number of shares of new stock as he may be entitled to subscribe for, in proportion to his existing stock in the bank. If any stockholder should fail to subscribe for the amount of stock to which he may be entitled within a reasonable time, which shall be stated in the notice, the directors may determine what disposition shall be made of the privilege of subscribing for the new stock."

Section 5142 of the Revised Statutes is as follows: "Any association formed under this Title may, by its articles of association, provide for an increase of its capital from time to time, as may be deemed expedient, subject to the limitations of this Title. But the maximum of such increase to be provided in the articles of association shall be determined by the Comptroller of the Currency; and no increase of capital shall be valid until the whole amount of such increase is paid in, and notice thereof has been transmitted to the Comptroller of the Currency, and his certificate obtained, specifying the amount of such increase of capital stock, with his approval thereof, and that it has been duly paid in as part of the capital of such association."

It is urged on behalf of the plaintiff in error that no increase

of the capital stock of the bank was ever proposed by the directors or assented to by the subscribers, except an increase of the full sum of $500,000; that no such increase as that was ever fully paid in, as required by the statute, and that no such increase was approved by the certificate of the Comptroller of the Currency; that his agreement of subscription was to take thirty shares of a new stock out of the whole sum of $500,000; that that agreement has never been carried into effect, and that he has never consented to any modification of it, and that, consequently, whatever effect would be attributable to the acts of the directors or stockholders of the bank, in conjunction with the Comptroller of the Currency, they are *res inter alios actæ*, and not binding on him.

On looking at the terms of § 5142 of the Revised Statutes, it appears that three things must concur to constitute a valid increase of the capital stock of a national banking association: 1st. That the association, in the mode pointed out in its articles, and not in excess of the maximum provided for by them, shall assent to an increased amount; 2d, That the whole amount of the proposed increase shall be paid in as part of the capital of such association; and 3d, That the Comptroller of the Currency, by his certificate specifying the amount of such increase of capital stock, shall approve thereof, and certify to the fact of its payment.

In the present case the association did, in fact, finally assent to an increase of the capital stock, limited to $461,300; that amount was paid in as capital, and the Comptroller of the Currency by his certificate approved of the increase, and certified to its payment; so that there seems little room to question the validity of the proceedings resulting in such increase. All the requisitions of the statute were complied with. The circumstance that the original proposal was for an increase of $500,-000, subsequently reduced to the amount actually paid in, does not seem to affect the question, for the amount of the increase within the maximum was always subject to the discretionary power of the association itself, exerted in accordance with its articles of association, and to the approval and confirmation of the Comptroller of the Currency.

The question, therefore, seems to be converted into this: Whether the subscription of the plaintiff in error to a proposed increase of $500,000, and his payment thereof, can be held to be a binding agreement to accept thirty shares out of the reduced amount.

It will be observed that, without waiting to see what the future action of the association and the Comptroller of the Currency might be on the question of the ultimate amount of the increased stock, the plaintiff in error paid for his shares and accepted his certificate. This he did, in legal contemplation, with knowledge of the law which authorized the association and the Comptroller of the Currency to reduce the amount of the proposed increase to a less sum than that fixed in the original proposal of the directors; and such payment and acceptance of certificates in accordance therewith might amount, under such circumstances, on his part, to a waiver of the right to insist that he should not be bound unless the whole amount of the proposed increase should be subscribed for and paid in. But without insisting upon that point, or deciding it, we think that the subsequent conduct of the plaintiff in error amounts to a ratification, on his part, of the action of the association, and of the Comptroller of the Currency, in fixing the amount of the increased stock at the less sum.

After he paid his subscription and received his certificates of stock, he was called upon, as a stockholder, alleged to be the owner of sixty shares of the capital, to pay an assessment voluntarily imposed upon themselves by the stockholders at a regular meeting, at which the transaction of such business was not only legitimate, but necessary, as a condition on compliance with which alone the association was to be permitted to resume and continue its business as a bank. The bank was in a condition of open and notorious insolvency. It was in the actual control of an examiner appointed, by the Comptroller of the Currency, so far as lawful, for the express purpose of ascertaining its true condition, in order to determine the question whether it might be permitted, on any conditions, to resume business, or whether it should be required to go into liquidation, by the appointment of a receiver to wind up its affairs. These facts were certainly

known to the plaintiff in error, or, at any rate, were so notorious that he cannot be permitted to allege ignorance of them. A regular meeting of the stockholders was called by public notice, given in the usual form, for the election of directors and the transaction of any other business that might be brought before them. At this meeting official communication was made that, according to the determination of the association and of the Comptroller of the Currency, the increased and paid-up capital stock of the bank had been fixed at $961,300, and that the whole amount of it had been lost; that it was necessary to replace it by an assessment of one hundred per centum on the par value of all the shares in order to enable it to resume and carry on its business, and that otherwise it would be placed in the hands of a receiver and required to go into liquidation.

Section 5205 of the Revised Statutes provides that: "Every association which shall have failed to pay up its capital stock, as required by law, and every association whose capital stock shall have become impaired by losses or otherwise, shall, within three months after receiving notice thereof from the Comptroller of the Currency, pay the deficiency in the capital stock by assessment upon the shareholders *pro rata* for the amount of capital stock held by each. . . . If any such association shall fail to pay up its capital stock, and shall refuse to go into liquidation, as provided by law, for three months after receiving notice from the Comptroller, a receiver may be appointed to close up the business of the association according to the provisions of section fifty-two hundred and thirty-four."

It was in pursuance of these provisions of the law that notice was given by the Comptroller of the Currency to the stockholders of the bank, at this, their regular annual meeting, that they must either assess themselves and pay in the whole amount of 100 per centum upon their capital stock, fixed at the sum of $961,300, or, in the alternative, go into liquidation. In pursuance of this notice, in full view of the facts, and with a presumed knowledge of the law, the stockholders, by a vote that was almost unanimous, assented to the first branch of the alternative, and, as a condition for being permitted to resume business, voluntarily voted the required assessment. The

plaintiff in error, it is true, was not present at this meeting, but he had notice of its proceedings, and in pursuance of its vote paid the full amount of the assessment imposed upon him as the holder of sixty shares of the capital stock of the company.

In our opinion, it is not open to him now to say that he made this payment in ignorance of the facts, or in ignorance of the legal right which he now seeks to assert to avoid the obligation. His payment was voluntary; it was made either with actual knowledge of the facts, or with such opportunity and means of knowledge as, by the exercise of common diligence would have made him acquainted with the facts, and the payment made by him in conjunction with his co-stockholders was made upon a distinct consideration, whereby the bank in which he was interested was enabled to undertake anew its regular and active business. Such a course of action on his part must be construed to constitute a complete acquiescence in and ratification of the previous action of the association and the Comptroller of the Currency, in reference to the increase of the capital stock; and he cannot be permitted now to deny that he thereby became, and has continued to be, an owner of sixty shares of the capital stock of the bank fixed at the increased sum.

This conclusion is not weakened by the suggestion, made in argument, that these proceedings of the bank took place during the period when its affairs were under the supervision of the Comptroller of the Currency, acting through the examiner. Notwithstanding the suspension of its business while under his control, the association continued its corporate existence, and was competent to exercise corporate functions. The increase of its capital, the vote of the assessment for the purpose of restoring what had been lost, and the acceptance of the alternative proposed by the Comptroller of the Currency to avoid going into liquidation, were all exertions of corporate powers, which, under the circumstances, the statute expressly contemplated and authorized. It is, therefore, not at all to the point that its assets and affairs were subject to the supervision of the bank examiner. Nor is the conclusion affected by the other

consideration, also urged in argument, that the attempt to revive the business of the bank by means of the assessment proved unsuccessful and abortive. The association, through its directors and stockholders, undertook the task, and entered upon its accomplishment, and in doing so materially changed its relations to its creditors. The failure to prosecute its business successfully certainly cannot have the operation now claimed for it, of making illegal all that was done in the prosecution of the experiment. The hazard of failure must be presumed to have been in the contemplation of the stockholders when they consented to the risk, and the consequences of failure cannot now be shifted from themselves to their creditors.

The second ground of defence to the action at law is, in our opinion, equally untenable. The assessment imposed upon the stockholders by their own vote, for the purpose of restoring their lost capital, as a consideration for the privilege of continuing business, and to avoid liquidation under § 5205 of the Revised Statutes, is not the assessment contemplated by § 5151, by which the shareholders of every national banking association may be compelled to discharge their individual responsibility for the contracts, debts, and engagements of the association. The assessment as made under § 5205 is voluntary, made by the stockholders themselves, paid into the general funds of the bank as a further investment in the capital stock, and disposed of by its officers in the ordinary course of its business. It may or may not be applied by them to the payment of creditors, and in the ordinary course of business certainly would not be applied, as in cases of liquidation, to the payment of creditors ratably; whereas under § 5151 the individual liability does not arise, except in case of liquidation and for the purpose of winding up the affairs of the bank. The assessment under that section is made by authority of the Comptroller of the Currency, is not voluntary, and can be applied only to the satisfaction of the creditors equally and ratably. If the claim in the present case were allowed, it would follow that in every case payments made by stockholders, for the purpose of restoring the impaired capital,

would be considered as credits on the ultimate individual responsibility of shareholders, and the whole efficiency of the provisions of § 5151 for the protection of the creditors of the company at the time of liquidation would be destroyed. The obligations of the shareholders under the two sections are entirely diverse, and payments made under § 5205 cannot be applied to the satisfaction of the individual responsibility secured by § 5151. *Scovill* v. *Thayer*, 105 U. S. 143.

But, it is said, in the third place, as the ground of relief under the bill in equity, that while this may be the result of a strict application of technical law, there remains to the complainant an equity which entitles him, by some process of substitution, to apply the payment which he has made under § 5205 to extinguish his liability under § 5151. So far as can be gathered from the allegations of the bill, the facts found, and the argument of counsel, this equity is supposed to rest upon the facts that the money paid by the stockholders under the assessment was in fact applied to the satisfaction of the debts of the bank; that such application was intended by the appellant when the assessment was paid; and that he paid it in the belief that it would exonerate him from further liability as a stockholder, induced by representations made to him to that effect by others interested in the affairs of the bank. Whatever hardship there may be in the circumstances of the case, we are unable to discover any ground of equitable relief. If the assessment was applied by the officers of the bank to the satisfaction of its debts, there is nothing to show that it was done ratably, as required by § 5151. The assessment was not paid by the stockholders for the purpose of effecting a liquidation of the affairs of the bank, but was understood to be the price paid for the privilege of continuing its business, in the hope of saving their investment. If it was paid under a mistaken supposition that, in the event of future failure, nothing more could be required of them, there is nothing to show that the shareholders were led into the mistake by any misrepresentations either of fact or of law on the part of the creditors for whose benefit the receiver is now acting. The mistake, if any, is one for which each shareholder is alone responsible.

On the whole, we are constrained to conclude that the defences at law and the alleged ground of relief in equity are alike insufficient, and that the judgment and the decree of the Circuit Court must be

*Affirmed.*

Mills *v.* Butler, Receiver. Taunton Savings Bank *v.* Butler, Receiver. Charlestown Five-Cent Savings Bank *v.* Butler, Receiver. Morrison *v.* Butler, Receiver. Appeals from the Circuit Court of the United States for the District of Massachusetts. Mills *v.* Butler, Receiver. Taunton Savings Bank *v.* Butler, Receiver. Charlestown Five-Cent Savings Bank *v.* Butler, Receiver. Morrison *v.* Butler, Receiver. In error to the Circuit Court of the United States for the District of Massachusetts. The cases in which Harvey Mills, The Taunton Savings Bank, The Charlestown Five-Cent Savings Bank, and Charles E. Morrison are respectively appellants and plaintiffs in error *v.* Peter Butler, Receiver of the Pacific National Bank of Boston, depend upon the same facts, and are governed by the decisions in the cases wherein John P. Delano is appellant and plaintiff in error against the same defendant. The judgments and decrees in these cases, respectively, are, consequently, also

*Affirmed.*

*Mr. George F. Hoar* and *Mr. Benjamin N. Johnson,* for plaintiffs in error and appellees.

*Mr. A. A. Ranney,* for defendant in error and appellee.