## HUFF v. PAGE. *
### HUFF et al. v. SAME.

(Circuit Court of Appeals, Fifth Circuit. November 25, 1924.)

Nos. 4331, 4332.

Banks and banking ⬅248(1)—Shareholder's payment to receiver of national bank to enable bank to resume business held no defense in action to enforce assessment.

In suit by receiver appointed by Comptroller of Currency under Act June 30, 1876, and Act May 15, 1916 (Comp. St. § 9821), against shareholder to enforce payment of assessment under Act Dec. 23, 1913 (Comp. St. § 9689), payment by shareholder of an amount to enable bank to resume business, after appointment of receiver, in reliance on representations by receiver made with acquiescence of Comptroller that payment would discharge liability of shareholder, *held* no defense.

In Error to the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Suits by Irving Page, receiver of the First National Bank of Lawton, Okl., against R. E. Huff, and against Mrs. Elizabeth Huff and others. Judgments for plaintiff, and defendants bring error. Affirmed.

W. F. Weeks and Tarlton Morrow, both of Wichita Falls, Tex., for plaintiffs in error.

F. W. Fischer, of Wichita Falls, Tex., and E. E. Blake, B. D. Shear, and Chester L. Evans, all of Oklahoma City, Okl., for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

*Rehearing denied January 31, 1925.

WALKER, Circuit Judge. Each of these suits was an action by the receiver of an insolvent national bank, appointed by the Comptroller of the Currency on November 18, 1922, against a shareholder of that bank, to enforce the payment of an assessment of $100 per share made against the bank's shareholders by order of such Comptroller on January 27, 1923. The court sustained exceptions to the portion of the answer to the petition in each of the cases which contained matter relied on as a special defense. The just referred to portion of the answer, after averring the appointment, on or about the 21st day of December, 1921, by the Comptroller of the Currency, of Bernard Ulrich as receiver of said bank, following a run on the bank and a disclosure of its inability to meet its obligations, and that said receiver took charge of the bank immediately upon his qualifying as such receiver, alleged as follows:

"That the said receiver so appointed by the Comptroller of Currency under and by virtue of the provisions of the national banking laws of the United States, and as such receiver had the right and authority to demand the payment of the 100 per cent. assessment prescribed by the laws of the United States as a liability due by shareholders to creditors of said national banking corporation; that sometime after the appointment of said receiver, to wit, about 60 days after the appointment of said receiver, defendant was informed that the losses of said bank were more than sufficient to absorb the capital and surplus of said bank and that it would be necessary to make an assessment of 100 per cent. and that such assessment was ordered by the Comptroller of Currency, and demanded by said receiver, and this defendant did pay said assessment to said receiver, who was at said time acting for and on behalf of the creditors of said corporation; that after said time, by some manner, the exact nature of which is unknown to this defendant, arrangements were made whereby certain parties additionally secured certain of the other alleged assets of the bank to the extent of about $150,000, so that same were represented by said receiver and agent of said creditors to be good and said bank to be solvent; that the facts with respect to the solvency of said bank were not fully known to this defendant, and reliance was placed upon said representations and the payment of said money was made upon the belief that the same was necessary and required under the provisions of the laws of the United States and would satisfy the obligation

which this defendant owed as the owner of stock under and by virtue of the laws of the United States authorizing 100 per cent. assessment. That said money was actually paid to the receiver and actually paid out to creditors, so this defendant is informed and believes, and alleges as a fact, and this defendant says that by virtue of such payment the liability of this defendant has been fully discharged and there cannot now be, under a second receivership, an additional assessment made.

"This defendant further alleges that after such payment of said 100 per cent. assessment, and after the security of said other items, including said $150,000 item, said bank reopened; that a number of the depositors of said bank agreed to accept payment in six, twelve, and eighteen months, or upon some such terms, or at any rate to accept payment in installments, and while said bank reopened on or about the 22d day of May, 1922, the same conducted practically no business thereafter until it was finally closed and placed in the hands of a second receiver as hereinafter set out; that said creditors at said time knew of the arrangements and representations that were being made to the defendants and were charged in law to know such representations, and permitted such representations to be made, and permitted said receiver to represent that such payment would be in full discharge of any further liability, and of all liability for 100 per cent. assessment, and knew at that time defendant was relying upon said representations. That this defendant further relied upon the representations of said receiver which were made with the knowledge and consent of the creditors, and as the agent of said creditors, that said bank was in sound condition; that at said time no examination was made by a bank examiner, but shortly thereafter the same examiner, who had previously examined the same, to wit, the said Sullinberger, re-examined the same and reported that the same was insolvent when it reopened; that said item of $150,000 was not fully secured and that other items, that had been represented by the said receiver to be valuable, were in fact valueless and losses to the bank and he reported such condition to the Comptroller of Currency, and said bank was closed and has remained closed since such time; that it now appears that same should not have reopened without such examiner's report, but such fact was unknown to the defendant.

"That all the above representations were made by said receiver, so this defendant is informed and believes, and alleges as a

fact, with the consent and under the advice and direction of the Comptroller of Currency, who had full charge thereof under the laws of the United States, and who was the representative of all the creditors; that in making said payment this defendant believed that the same was in full satisfaction of his liability under the provisions of the national banking laws of the United States authorizing an assessment of 100 per cent. to pay creditors, and believed the other representations made, and, but for such belief, would not have paid said money; and this defendant says that his liability has been fully discharged, but if it has not been fully discharged, then the effect of the matter is to require him to pay twice to the same creditors, and, in this connection, defendant alleges that the creditors of said bank, he is informed, are the creditors who existed at the time he made his payment; and said payment was not made voluntarily but under coercion and based upon said representations, and if same does not constitute a satisfaction in law of his liability, then the same should be held to be such in view of the facts above pleaded and an estoppel has arisen in favor of this defendant, which is here now pleaded.

"Wherefore, the defendant says that the plaintiff should take nothing against him; that he should be discharged with his costs.

"Defendant further says, with respect to his plea of estoppel, and the facts set up above as to the previous payment, that inasmuch as all of the facts with respect to whom are now creditors, and with respect to who were creditors at the time of said payment by defendant are in the possession of plaintiff, that he should be required to disclose the same and to disclose the exact condition of the affairs of the said bank with respect to its assets and liabilities, and if it should appear that there are any new creditors as to whom may have any rights against the defendant, a fact which is not admitted but denied; but that there are other old creditors who received the benefit of the payment heretofore made by defendant to said first receiver, and who are estopped now to assert any further rights against this defendant, then as to said new creditors it be ascertained what amount, if any, defendant should now pay, taking into consideration the other assets of said bank and in considering the liability of said bank to said creditors who are estopped to assert rights against this defendant."

With reference to the above set out part of the answer, the following is to be noted: It contains no allegation that the payment relied on was made pursuant to an assessment ordered by the Comptroller of the Currency, or that such payment was demanded by the receiver. The allegation in that regard is that the defendant was informed (in what way or by whom not being stated) that such assessment was ordered by the Comptroller of the Currency, and demanded by said receiver. It does not allege that the existing creditors of the bank were its creditors when such payment was made. The averment in that regard is to the effect that the defendant is informed that the creditors of the bank are the creditors who existed at the time he made his payment. It contains an allegation to the effect that such payment was made in reliance "upon representations of said receiver which were made with the knowledge and consent of the creditors, and as the agent of said creditors, that said bank was in sound condition." It does not aver that the money paid to the receiver was paid to the bank's creditors ratably, or that the defendant understood that it was to be so paid. The averments in that regard are consistent with the inference that the amount paid by defendant to the receiver was, with the consent of defendant, paid to preferred creditors of the bank. It was not averred that when the payment was made the defendant understood that the bank had gone into liquidation, or that a winding up of its affairs was then contemplated. The averments as a whole are consistent with the conclusions that the alleged payment was made pursuant to a vote of the shareholders, for the purpose of restoring their lost capital, and with the understanding on the part of the defendant that the bank would be reopened and would resume its business. The averments do not negative the conclusion that the reopening of the bank and the subsequent carrying on of its business by its own officials were in accordance with the expectation of the defendant when the payment in question was made.

We think that the maintenance of the special defense set up would involve the affirmance of the proposition that a payment by a national bank shareholder of an amount in addition to that invested in his paid up shares, for the purpose of enabling the bank to resume business, after the appointment of a receiver by the Comptroller of the Currency, pursuant to authority conferred by statute (19 St. 63; 39 St. 121 [Comp. St. § 9821]), following an impairment of the bank's capital stock by losses or otherwise, would, to the extent of such payment, prevent the enforcement of the

liability of the shareholders prescribed by statute in case of the bank's insolvency and liquidation (19 St. 63; 38 St. 273 [Comp. St. § 9689]), if such payment was made in reliance on representations by the receiver, made with the knowledge and acquiescence of the Comptroller, that such payment, to the extent of the amount of it, would satisfy or discharge such liability of the shareholder. That the just stated proposition is not a tenable one is made manifest by the opinion in the case of Delano v. Butler, 118 U. S. 634, 7 S. Ct. 39, 30 L. Ed. 260, dealing with a somewhat similar state of facts. As the law charges a shareholder with notice that a payment made by him to enable his bank to resume business (which is done), after an impairment of its capital, does not affect his liability which arises in case of the bank's liquidation and for the purpose of winding up its affairs, misinformation from any source as to the law governing in such a situation cannot properly be given the effect of wholly or partially discharging such liability of the shareholder, or of depriving the Comptroller of the Currency of the power of enforcing that liability when the bank is in liquidation, following its resumption of business after the making of such payment by the shareholder.

It is not necessary to determine whether a personal liability in favor of the defendant did or did not result from the state of facts alleged. The existence of such personal liability would not affect the power of the Comptroller of the Currency to take appropriate action to enforce the statutory liability of the failed bank's shareholders, or lessen his official duty to exercise such power for the benefit of the bank's creditors.

The conclusion is that the above-mentioned ruling, which alone is relied on for reversal, was not erroneous.

The judgments are affirmed.