COMMISSIONER OF BANKS *vs.* EDWIN T. McKNIGHT & others.

Suffolk.    December 14, 1932. — January 5, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Trust Company*, In liquidation: stockholder's liability. *Statute*, Construction. *Constitutional Law*, Police power, Banking laws. *Bankruptcy*. *Equity Pleading and Practice*, Decree.

Where a statute enacted by the General Court is taken in large measure in the same words from a statute enacted in another jurisdiction, the judicial interpretation of its words by courts of that other jurisdiction is presumed to have been intended to be adopted, in the absence of controlling reasons to the contrary. Per RUGG, C.J.

The commissioner of banks, in possession of an insolvent trust company closed for liquidation in 1931, was entitled to enforce against its then stockholders their individual liability under G. L. (Ter. Ed.) c. 172, § 24, for an assessment equal to the entire par value of their shares, notwithstanding the circumstances that in 1925 an assessment of seventy per cent had been levied upon the same shares under § 25 by vote of the directors following a notice from the commissioner of banks to the trust company, and that such assessment had been collected in full by payments by some of the then stockholders and by sale of the shares of the others at auction.

*Whether*, after an assessment has been levied under said § 25, there is personal liability on the part of the shareholders to pay it or whether the only remedy for its collection is by sale of the shares at public auction as therein provided, was not decided.

Under G. L. (Ter. Ed.) c. 167, § 24, the commissioner of banks may maintain a suit in equity to enforce the liability of the stockholders under said c. 172, § 24, even though no judgment has been recovered against the trust company.

Sections 22, 24 of G. L. (Ter. Ed.) c. 167, are constitutional.

Where one had bought stock in a trust company which was indorsed to him in blank and held by him, but for which no new certificate had been issued in his name, he was the owner of the shares and was liable for an assessment under G. L. (Ter. Ed.) c. 172, § 24.

Where, after a holder of stock in a trust company had given a note to the company and as collateral security therefor had delivered to it his certificate of stock indorsed in blank, he was adjudicated a bankrupt and received his discharge as such and the trust company made proof of its claim against the bankrupt stating the collateral held by it, the implication was that the trustee in bankruptcy did not choose to accept title to the shares, although he had not transferred to the bankrupt any right, title or interest therein; the inference of ownership in the bankrupt arising from the fact that the certificates stood in his name was not overcome; and, the trust company having been closed in liquidation thereafter, he remained liable for an assessment under G. L. (Ter. Ed.) c. 172, § 24.

Although the bill in a suit in equity by the commissioner of banks to enforce the liability of a stockholder of an insolvent trust company under G. L. (Ter. Ed.) c. 172, § 24, was taken *pro confesso*, it was *held* that, in view of findings by a master that he was not the real owner of shares and that the commissioner had elected to hold the real owner, no final decree should be entered against him.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on November 19, 1931, and afterwards amended, described in the opinion.

The suit was referred to a master, and subsequently was reserved by *Pierce*, J., for determination by the full court. Material facts are stated in the opinion.

*J. V. Spalding*, (*G. Bolton* with him,) for the plaintiff.

*R. P. Delano*, (*C. T. Cottrell & G. H. Chase* with him,) for certain defendants.

*H. M. Chase & G. H. Chase*, for the defendant Bucek, submitted a brief.

*E. Kurland*, for the defendant Rudnick, submitted a brief.

*W. S. Thompson & J. O. Burdett*, for the defendants Ammann and others, submitted a brief.

RUGG, C.J. This suit in equity is brought by the commissioner of banks, in possession for the purpose of liquidation of the insolvent Industrial Bank & Trust Company under powers conferred by G. L. (Ter. Ed.) c. 167, § 22, to enforce for the benefit of its creditors the individual liability of its stockholders established by G. L. (Ter. Ed.) c. 172, § 24. It was stipulated by the parties that the commissioner of banks pursuant to power conferred by said c. 172, § 25, on December 9, 1924, instructed the bank to levy an assessment of seventy per cent of the par

value of its stock upon all its stockholders as a condition of its continuance as a banking institution; that in consequence in February, 1925, the directors of the bank voted to levy such an assessment upon its stockholders; that in conformity to this vote certain stockholders made payment of the several amounts assessed on their shares and that stock on which the assessment was not paid was subsequently sold at auction in accordance with law and the amount of the assessment realized in that way, that thus the total amount of the seventy per cent of the par value of its capital stock was paid to the bank. There was no increase in the capitalization of the bank. All the shares outstanding on March 19, 1931, the date of the closing of the bank for liquidation, were outstanding at the time of the assessment of February, 1925, and were subject thereto. After the proceeds of that assessment were received by the bank it continued to do business without being in liquidation until March 19, 1931. The validity of that assessment of seventy per cent is not now questioned. *Commercial National Bank* v. *Weinhard*, 192 U. S. 243.

The one contention common to all the stockholding defendants is that their liability can be enforced in this proceeding to the extent of only thirty per cent because of the contribution of seventy per cent made in 1925 on account of the shares of stock now owned by them. The contention of the plaintiff is that he is entitled to collect the entire par value of the shares, regardless of the collection of the earlier assessment. The solution of the problem thus presented depends upon the construction of G. L. (Ter. Ed.) c. 172, §§ 24, 25. Power is conferred upon the commissioner of banks to enforce by suit in equity the individual liability of the stockholders in a trust company in his possession for purposes of liquidation. G. L. (Ter. Ed.) c. 167, § 24. His determination as to the percentage of liability so to be enforced is final. His authority is plenary. This was decided after full discussion in *Commissioner of Banks* v. *Prudential Trust Co.* 242 Mass. 78. That decision rested in large measure upon the fact that crucial provisions of our statutes were taken from the national banking act

and that therefore the interpretation given them by the Supreme Court of the United States would be followed in the construction of similar clauses of our statutes. The principle controlling that decision was that where a statute enacted by the General Court is taken in large measure in the same words from a statute enacted in another jurisdiction, the judicial interpretation of its words by courts of that other jurisdiction is presumed to have been intended to be adopted, in the absence of controlling reasons to the contrary.

The material words of said § 25 are that any trust company "whose capital stock has, in the opinion of the commissioner, become impaired by losses or otherwise, shall, within three months after receiving notice from the commissioner, pay the deficiency in the capital stock by assessment upon the stockholders pro rata to the shares held by each. If such corporation shall fail to pay such deficiency in its capital stock for three months after receiving such notice, the commissioner may apply to the supreme judicial court for an injunction; and if a stockholder of such corporation neglects or refuses, after three months' notice, to pay the assessment as provided in this section, the board of directors shall cause an amount of his stock sufficient to make good his assessment to be sold by public auction, after thirty days' notice given by posting such notice in the office of the corporation and by publishing it in a newspaper of the city or town where the corporation is located or in a newspaper published nearest thereto; and the balance, if any, shall be returned to such delinquent stockholder. This section shall not take away the right of creditors to enforce the liability of stockholders in such corporations, as provided in the preceding section, or the right of the commissioner to enforce such liability as provided in section twenty-four of chapter one hundred and sixty-seven, nor increase the general liability of such stockholders." Those words, with an exception presently to be noted, also were taken in the main in substance and effect from the national bank act, U. S. Rev. Sts. § 5205. They were first incorporated into our statutory law by St. 1892, c. 327.

By a decision rendered in 1886 the similar words of the national bank act had been interpreted and construed in *Delano* v. *Butler*, 118 U. S. 634. That decision held that the liability of a stockholder of a national bank in liquidation to an assessment to discharge his individual responsibility for debts, contracts and engagements of the bank under U. S. Rev. Sts. § 5151 (similar to the liability established by G. L. c. 172, § 24), was not diminished or in any way affected by a previous assessment paid under U. S. Rev. Sts. § 5205 (similar to the assessment authorized by G. L. c. 172, § 25), for the purpose of restoring lost capital and to avoid liquidation at that earlier time. To the same effect are recent decisions by circuit courts of appeals. *Huff* v. *Page*, 2 Fed. Rep. (2d) 544. *Page* v. *Jones*, 7 Fed. Rep. (2d) 541. The decision in *Delano* v. *Butler* would be entirely persuasive as to the intention of the General Court in adding said § 25 to our bank laws, but for the fact that there is incorporated in said § 25, following the provision that the section shall not take away the right of the commissioner to enforce the liability of stockholders as provided in G. L. (Ter. Ed.) c. 172, § 24, a clause not found in the national bank act, to the effect that the section shall not "increase the general liability of such stockholders." It is strongly argued that the effect of these words is to render inapplicable to cases under our statute the rule of *Delano* v. *Butler*, which was decided with reference to the failure of a national bank in Boston only six years prior to the first enactment by St. 1892, c. 327, of what is now said § 25.

The main purpose of said § 25 is to enable the stockholders of a trust company to avoid liquidation and to continue its business. It contemplates its operation, not its closing. The assessment there authorized is for the purpose of restoring impaired capital. It stands in this respect on the same footing as the initial payment for capital in settlement of original subscriptions for shares of stock. It is for the benefit of the corporation. Its purpose is to enable the corporation to remain with doors open and to enjoy public confidence. Said § 25 was engrafted upon an exist-

ing statute which contained the liability on stockholders up to the par value of their stock now found in said § 24 (c. 172) and here sought to be enforced. By its express terms said § 25 does not take away that special liability established by said § 24 or the means for its enforcement. It would be incompatible with this provision to hold that payments made under said § 25 should reduce the assessment under said § 24. Such an interpretation would violate the canon of statutory construction that several sections of an act must be given a meaning which renders them harmonious and not contradictory. *Moloney* v. *Selectmen of Milford,* 253 Mass. 400, 402.

Whether an assessment under said § 25 shall be levied and paid is a matter to be determined by the particular trust company coming within its operative effect. It is optional with the corporation to decide whether its stockholders shall pay the assessment and continue the business of the corporation or whether the alternative shall be accepted of leaving the commissioner of banks to take action in the ways open to him under the statute. That is a matter of corporate decision commonly to be passed upon by the stockholders. See *Opinion of the Justices,* 261 Mass. 556, 596, 597; *Commercial National Bank* v. *Weinhard,* 192 U. S. 243. The words that the assessment under said § 25 shall not be construed to "increase the general liability of such stockholders" emphasize this optional feature and make plain that the power of the commissioner of banks is not absolute, but merely advisory to require the payment of such an assessment for the purpose of continuing the operation of the business. The trust company, rather than make the assessment to restore the impaired capital, may prefer to go into liquidation or to leave the commissioner of banks to take such further steps as may be deemed wise. It may desire to contest his conclusion that the capital has become impaired. The words "shall, within three months after receiving notice from the commissioner, pay" in their context in said § 25 do not import compulsory mandate, but rather permissive choice between courses

of action. *Cheney* v. *Coughlin,* 201 Mass. 204, 211, 212. *Rea* v. *Aldermen of Everett,* 217 Mass. 427, 430.

In the case at bar the shareholders of the trust company voluntarily paid the assessment of seventy per cent voted by the directors under said § 25, or suffered their shares of stock to be sold at public auction and thus the capital was restored. This conduct was designed solely to promote the operation of the trust company. The business was continued for more than six years thereafter. The object of that payment and restoration of capital was accomplished. When the new obstacles were encountered in 1931 new measures were required quite disassociated from what had gone before. If the assessment in 1925 had been levied by vote of the stockholders, it would have been a liability incident to being a stockholder in a corporation and in that sense implicit in that relationship because incurred by voluntary action of the corporation. *Albert E. Touchet, Inc.* v. *Touchet,* 264 Mass. 499, 509. It would not have increased the "general liability" of the stockholders.

It is manifest from said §§ 24, 25, regulating trust companies, that a bank in operation was designed to hold out to the public as security for depositors not only the capital but also the unimpaired liability of stockholders to the amount of their stock at par so far as necessary to pay its debts in liquidation.

It is not necessary to determine whether after an assessment has been levied under said § 25 there is personal liability on the part of the shareholder to pay it or whether the only remedy for its collection is by sale of the shares of the shareholder at public auction as therein provided. See *Shriver* v. *Woodbine Bank,* 285 U. S. 467, 476, 477, 478. Without considering that aspect of said § 25, we think that for the reasons already stated the seventy per cent paid on account of the shares of stock to restore impaired capital in 1925 is no defence to the present proceeding to collect one hundred per cent on such shares under said § 24.

The commissioner of banks by virtue of the large powers conferred upon him by St. 1922, c. 488, § 1, now embodied

in G. L. (Ter. Ed.) c. 167, § 24, was authorized to institute this suit even though no judgment had been recovered against the corporation, theretofore a prerequisite. There is nothing contrary to this in *Cosmopolitan Trust Co.* v. *Cohen,* 244 Mass. 128. The writ in that case was sued out before the enactment of said c. 488, which also provided by § 4 that it should not apply to proceedings touching a trust company then in liquidation; consequently it had no bearing upon that case, and was not referred to in the opinion. What there was said has no bearing upon the issues here presented. *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335, 343.

Sections 22, 24 of G. L. (Ter. Ed.) c. 167 are constitutional under established principles. The suggestion to the contrary requires no discussion. *Cosmopolitan Trust Co.* v. *Mitchell,* 242 Mass. 95. *Commissioner of Banks* v. *Prudential Trust Co.* 242 Mass. 78.

Where one had bought stock in the trust company which was indorsed to him in blank and held by him but for which no new certificate had been issued in his name, he was the owner of the shares and is liable to the assessment. This is settled by *Cunningham* v. *Commissioner of Banks,* 249 Mass. 401, 422, 423. As was said in *Early* v. *Richardson,* 280 U. S. 496, 499: "That the actual owner of the stock may be held for the assessment although his name does not appear upon the transfer books of the bank, is well settled." No fraudulent conduct is essential to liability in such case in order to establish liability. .

The record owners of stock in the circumstances disclosed in the case at bar were liable to the assessment, even where there had been some form of transfer. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 253 Mass. 205, 227. *Commissioner of Banks* v. *Hanover Trust Co.* 247 Mass. 347.

This principle applies to stock standing in the name of Harold A. Rudnick as to whom the facts were these: in 1926 he gave a promissory note to the Industrial Bank & Trust Company and at the same time as collateral security therefor indorsed and delivered to the trust company his

certificate of stock. When the commissioner of banks took possession of the trust company in 1931 this note was found in the trust company and its collateral was found in the collateral loan box of the trust company. At some time the trust company obtained judgment on the note and Rudnick on several occasions requested it to sell the shares and credit him with the proceeds, but no sale was made. In 1928 Rudnick was adjudged a bankrupt and a trustee in bankruptcy was appointed. The trustee did not transfer to Rudnick any right, title and interest in the shares. The trust company made proof of its claim against the bankrupt stating the collateral held by it. Rudnick received his discharge in bankruptcy in 1929. Although the title to the shares subject to whatever claim the trust company may have had, if any, doubtless vested in the trustee in bankruptcy, he perhaps was not obliged to accept title if in his opinion it was worthless or likely to become a burden. *Cunningham* v. *Commissioner of Banks*, 249 Mass. 401, 423. The implication from the facts above narrated is that the trustee in bankruptcy did not choose to accept title to these shares. At all events the facts do not overcome the inference of ownership in Rudnick arising from the fact that the certificates stood in his name in connection with the other facts.

This principle is applicable so far as facts may warrant to the estate of Ira Shapira, who before his death was adjudicated a bankrupt. For aught that appears he was the record owner of these shares of stock at the time of his death. In the absence of further findings, this is enough to support the inference that he was a stockholder and that his estate was a stockholder.

The record owners of stock in the circumstances disclosed were liable to the assessment. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 253 Mass. 205, 227. *Commissioner of Banks* v. *Hanover Trust Co.* 247 Mass. 347.

All questions that have been argued by the defendants have been considered. Other points, if any, open to the parties are treated as waived.

Although the bill was taken *pro confesso* against Sarah

Bass and Standard Shares, Inc. the facts set forth in the master's report show that neither was the real owner of any shares of stock and that the commissioner of banks has elected to hold the real owners. Therefore no decree ought to be entered against them. *Boston Safe Deposit & Trust Co.* v. *Stratton*, 259 Mass. 465, 476, 477. The findings of the master are also in favor of Thelma Cobe, Sarah Greenberg, Margaret M. Lyons and Anders T. Tellstrom. As to these the bill may be dismissed without costs. The estates of James H. Conley and Ira Shapira are liable to the extent of available assets, less payments and distribution made pursuant to order of court. *Commissioner of Banks* v. *Hanover Trust Co.* 247 Mass. 347, 350. The plaintiff is entitled to a decree against the remaining defendants on the facts stated in the master's report on the basis of one hundred per cent on the par value of all shares of stock held by them severally. The details are to be settled by a single justice.

*Ordered accordingly.*