McFARLIN et al. v. FIRST NAT. BANK OF KANSAS CITY, KAN., et al.

(Circuit Court of Appeals, Eighth Circuit. June 3, 1895.)

No. 586.

NATIONAL BANKS—INCREASE OF CAPITAL—SUBSCRIPTIONS TO STOCK.
    Plaintiffs subscribed for certain shares of stock in the E. Bank, to be issued for the purpose of increasing its capital and changing it into a national bank, and paid certain installments on their subscriptions to the bank, to be held in trust until the whole subscription was paid and the shares legally issued. Subsequently they consented that the E. Bank should be consolidated with the F. National Bank, the capital of the latter increased from $100,000 to $200,000, and that their subscriptions should stand as subscriptions to such increase of the stock of the F. National Bank. They afterwards made some further payments on their subscriptions. Some preliminary steps were taken by the F. National Bank for the increase of its stock, but the comptroller of the currency refused to consent to an increase to more than $150,000, and, before that amount had been paid in and before any certificate had been made by the comptroller declaring the increase, the F. National Bank was declared insolvent and placed in the hands of a receiver. *Held*, that the plaintiffs had never become stockholders in the F. National Bank.

In Error to the Circuit Court of the United States for the District of Kansas.

This was an action by William McFarlin, John B. Wright, and Charles Baird, executors of the estate of T. W. Cornell, deceased, and others against the First National Bank of Kansas City, Kan., and W. T. Atkinson, its receiver, to recover back certain moneys paid to the bank. The circuit court overruled a demurrer to the answer. Plaintiffs bring error. Reversed.

The plaintiffs in error, William McFarlin, John B. Wright, and Charles Baird, executors, et al., who were also the plaintiffs in the circuit court, filed a complaint against the defendants in error, the First National Bank of Kansas City, Kan., and W. T. Atkinson, its receiver, which contained, in substance, the following allegations, to wit: That in the year 1890 the plaintiffs were solicited to subscribe for certain shares of stock in the Exchange Bank of Kansas City, Kan., with a view of increasing the stock of that bank from $51,000 to $300,000, and of converting the same into a national bank, to be called the "Exchange National Bank of Kansas City, Kansas"; that they severally assented to such proposition, and subscribed respectively for certain shares of stock to be issued by said proposed Exchange National Bank, agreeing to pay for the same in installments, which installments were to be paid to said Exchange Bank, and were to be held by it in trust, as a special deposit, to be applied in payment for the stock subscribed when the whole subscription should be paid and the shares of stock in said proposed Exchange National Bank should be legally issued; that the plaintiffs subsequently paid to said Exchange Bank, under

the aforesaid arrangement, in installments, the sum of $12,760, on account of their said subscriptions; that it was subsequently represented to them by the president of said Exchange Bank that it would be advantageous to consolidate said bank with the First National Bank of Kansas City, Kan., and to increase the stock of the latter bank to the extent of $100,000; that said First National Bank had, by resolution duly passed, already agreed to increase its capital stock from $100,000 to $200,000, and that said First National Bank then had a paid-up capital of $100,000 and a surplus of $10,500. Plaintiffs further averred that the proposition made to them to transfer their aforesaid subscription from the Exchange National Bank to the First National Bank, so that the subscription should stand as a subscription to the increased stock of the First National Bank in lieu of a subscription to the stock of the Exchange National Bank, was assented to, and that, by the representations aforesaid, they were induced to assent to said transfer and to make a further payment on account of the stock theretofore subscribed, which last-mentioned payment was made to the First National Bank. It was further averred that, at the time the aforesaid representations were made to the plaintiffs, said First National Bank was insolvent, which fact was wholly unknown to them; that all the moneys paid by them to the Exchange Bank of Kansas City on account of their several subscriptions were by said Exchange Bank turned over to the First National Bank when the latter was utterly insolvent, and that when the First National Bank was declared to be insolvent by the comptroller of the currency it held such fund, so received from the Exchange Bank, as a special deposit made by these plaintiffs to be applied in payment for shares of its increased stock when the same should be lawfully issued. The plaintiffs also averred, in substance, that on July 6, 1891, when said First National Bank was declared to be insolvent and a receiver of its affairs was appointed, they did not own any stock in said bank; that the money theretofore paid by them to the Exchange Bank, before the attempted consolidation, was held by said First National Bank, at the date of its insolvency, as a trust fund to be applied in payment for shares of its increased stock at the rate of $100 per share, which stock was to be issued to the plaintiffs when the whole amount of the increased stock was subscribed and paid for, and when the comptroller of the currency should have issued his certificate specifying the amount of such increase and his approval thereof. In conclusion the plaintiffs averred that: "Said proposed increase of the capital stock of said bank was never lawfully authorized by the owners of two-thirds of the capital stock of said bank; nor did two-thirds of the owners of said original stock ever vote for such increase, as required by law; nor was the whole amount of $100,000 of such proposed increase of stock ever paid into said bank as required by law; nor was the amount of such proposed increase of stock, which was agreed to be taken and paid for, ever paid into said bank; nor was the certificate of the comptroller of the currency * * * specifying the amount of said proposed increase of capital stock, with his approval thereof, and that it had been paid in as part of the capital of said bank, ever obtained; but, by reason of the insolvency and suspension of said bank, and the consequent winding up of its affairs, none of said conditions and requirements have been, or can now be, fulfilled or complied with on the part of said bank, nor the contract between said bank and these plaintiffs in reference to said shares of stock ever be completed or performed." In view of the premises, the plaintiffs prayed for a judgment against the First National Bank of Kansas City, Kan., in the sum of $12,760, together with interest thereon from the time the several installments had been paid.

The defendants filed an answer to the foregoing complaint, wherein they specifically denied that the First National Bank was insolvent at the time the attempt was made to consolidate that bank with the Exchange Bank. The other material allegations of the complaint were either admitted or left undenied. For a special defense to the action, the defendants pleaded as follows: "Defendants admit that, at the time of said approval by the officers and directors of the Exchange Bank and of the First National Bank of the suggestion to attempt a consolidation, an application had been made for the increase of the capital stock of the First National Bank of Kansas City, Kan., from one hundred thousand dollars to two hundred thousand dollars, and it was supposed by the officers and directors of the Exchange Bank that author-

ity had been received from the comptroller of the currency to make such increase of stock. Defendants further say that, after said suggestion of attempted consolidation had been approved by the officers and directors of both the First National Bank and the Exchange Bank, that the said Exchange Bank removed its assets and business to the room occupied by the First National Bank of Kansas City, Kan.; and that, in pursuance of an understanding between the officers and directors of both the First National Bank of Kansas City, Kan., and the Exchange Bank, the said Exchange Bank ceased to do business, and the said I. D. Wilson, president of the Exchange Bank, in pursuance of a further understanding between the officers and directors of the two banks, became the president of the First National Bank of Kansas City, Kan. And defendants further say that, immediately after the Exchange Bank ceased to do business, and immediately after its assets and property had been transferred to the place of business occupied by the First National Bank of Kansas City, Kan., the proposed subscribers to the stock of the proposed Exchange National Bank were notified of the action of the officers and directors in closing business, and were solicited to take stock in the increase of the First National Bank of Kansas City, Kan., in lieu of the stock which they had subscribed in the proposed Exchange National Bank, and that all of the plaintiffs in this action assented to the subscription to the increase of capital stock of the said First National Bank of Kansas City, Kan., in the same amount and for the same sums as had been subscribed by them to the stock of the proposed Exchange National Bank; and that plaintiffs, with full knowledge of all the foregoing facts in connection with the First National Bank and the Exchange Bank, consented that the sum of money which had been paid in by them to the Exchange Bank be considered as payment upon their various shares of stock in said increase of the First National Bank, and afterwards made further payment to the said First National Bank, in accordance with the original subscription made to the proposed Exchange National Bank. The defendants further say that, while it is admitted that the comptroller of the currency refused to allow the First National Bank of Kansas City, Kan., to increase its capital stock from one hundred to two hundred thousand dollars, and only authorized an increase of said capital stock to one hundred and fifty thousand dollars, yet such increase to one hundred and fifty thousand was accepted and ratified by the directors and the owners of more than two-thirds of the capital stock of said First National [Bank], and that such action on the part of the comptroller and the directors and stockholders was made public as soon as the same was taken and became a part of the records of the board of directors of the First National Bank; and that plaintiffs had knowledge of the same, either actual or constructive." By way of cross petition, the receiver also demanded a judgment against the plaintiffs for the several amounts alleged to be due from them on account of their alleged subscription to the stock of the First National Bank. Judgment was also demanded against the plaintiffs for the amount of an assessment which the comptroller of the currency had caused to be made against the stockholders of said bank.

Plaintiffs filed a general demurrer to the aforesaid answer, on the ground that it stated no defense to their alleged cause of action, which demurrer was overruled; and thereupon, as the plaintiffs declined to plead further, a final judgment was entered against the plaintiffs, dismissing their complaint, together with a judgment in favor of the receiver for the various amounts claimed to be due from the plaintiffs on account of the assessment and on account of the sums unpaid on their several subscriptions. To reverse said judgment, the plaintiffs have prosecuted a writ of error.

G. Pitman Smith and Chas. Baird, for plaintiffs in error.

Samuel R. Peters (Joseph W. Ady and John C. Nicholson, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The circuit court appears to have held that the answer filed by the receiver and by the First National Bank was sufficient to show that the plaintiffs occupied the relation of stockholders of the bank at the time of its insolvency, and that the grounds relied upon by the plaintiffs to show that they were not stockholders, but were merely creditors, had been held to be untenable in each of the following cases: Delano v. Butler. 118 U. S. 634, 7 Sup. Ct. 39; Aspinwall v. Butler, 133 U. S. 595, 10 Sup. Ct. 417; and Bank v. Eaton, 141 U. S. 227, 11 Sup. Ct. 984. We are of the opinion, however, that the view which seems to have controlled the decision of the circuit court was erroneous. In the cases above cited, it appeared that the directors of a national bank had voted to increase its capital stock from five hundred thousand to one million dollars; that subscriptions to the new stock had been invited from the shareholders, and that subscriptions to the amount of $461,300, and no more, had been obtained; and that the amount of such subscriptions to the new stock had been paid in full by the several subscribers. Subsequently, the directors adopted another resolution canceling so much of the proposed increased stock as was in excess of $461,300, the amount actually subscribed, and fixing the paid-up capital at $961,300, in lieu of $1,000,000, as at first proposed. The comptroller of the currency approved of the increase, to the extent of $461,300, and issued his certificate, in accordance with section 5142 of the Revised Statutes, that the stock had been increased to that amount, and that the amount of such increase had been paid in. The bank having been subsequently declared to be insolvent, and a receiver having been appointed to liquidate its affairs, certain of the shareholders who had subscribed for the new or increased stock, and who had paid the amount of their several subscriptions, attempted to escape liability as holders of the new stock on the ground that they had never assented to the resolution to cancel a portion of the increased stock and to reduce the capital of the bank from $1,000,000, as originally proposed, to $961,300. In two of the cases above cited,—Delano v. Butler, 118 U. S. 634, 7 Sup. Ct. 39, and Aspinwall v. Butler, 133 U. S. 595, 10 Sup. Ct. 417,—it appeared that the subscribers for new stock had not only paid for the same, but that they had each received and accepted stock certificates certifying to their ownership of the new stock. In the other case,—Bank v. Eaton, 141 U. S. 227, 11 Sup. Ct. 984,—the stock certificate, it seems, had not been made out or delivered. In these three cases it was held, substantially, that, although the original proposition made by the board of directors was a proposition to increase the stock to the extent of $500,000, yet the comptroller had power to assent to an increase less than was originally proposed, but equal to the amount that was actually subscribed and paid for. The court evidently entertained the view that the by-laws of the bank gave the board of directors authority to cancel such portion of the increased stock as was not taken by the shareholders, and that after the board had canceled so much as was not subscribed, and the comptroller had approved of the board's action, and had issued his certificate declaring that the stock had been increased to a given amount, it was then too

late for a subscriber to the new stock to object to the increase, or to assert that he was not a stockholder, on the ground that the increase was less than the sum originally proposed. The court also decided, in the cases above cited, that the several subscriptions then under consideration had not been made on condition that the entire amount of the proposed new stock should be subscribed. With reference to these points, Mr. Justice Bradley, in Aspinwall v. Butler, 133 U. S. 595, 607, 10 Sup. Ct. 417, used the following language:

"The deficiency under $500,000 arose from the fact that some of the stockholders did not avail themselves of their right to subscribe. The eleventh section of the by-laws of the bank has this express provision, that, 'if any stockholder should fail to subscribe for the amount of stock to which he may be entitled, within a reasonable time, which shall be stated in the notice, the directors may determine what disposition shall be made of the privilege of subscribing for the new stock.' This gave the directors full power over the deficiency of the subscriptions, and was in itself authority, if no other existed, to validate the action of the directors and the comptroller in disregarding such deficiency, and equating the new stock to the subscriptions actually made and paid in. There was no express condition that the individual subscriptions should be void if the whole $500,000 was not subscribed; and, in our judgment, there was no implied condition in law to that effect. Each subscriber, by paying the amount of his subscription, thereby indicated that it was not made on any such condition. It is not like the case of creditors signing a composition deed to take a certain proportion of their claims in discharge of their debtor. The fixed amount of capital stock in business corporations often remains unfilled, both as to the number of shares subscribed, and as to payment of installments, and the unsubscribed stock is issued from time to time, as the exigencies of the company may require. The fact that some of the stock remains unsubscribed is not sufficient ground for a particular stockholder to withdraw his capital."

We find nothing in either of these cases which lends any support to the view that the stock of a national bank can be lawfully increased before the entire amount of the new capital has been paid in and the comptroller of the currency has certified to the increase and to the fact of payment in the mode prescribed by section 5142 of the Revised Statutes. On the contrary, in Delano v. Butler, 118 U. S. 634, 649, 7 Sup. Ct. 39, it was said by Mr. Justice Matthews, and the doctrine has been adhered to in all subsequent cases, that:

"Three things must occur to constitute a valid increase of the capital stock of a national banking association—First, that the association, in the mode pointed out in its articles, and not in excess of the maximum prescribed for by them, shall assent to an increased amount; second, that the whole amount of the proposed increase shall be paid in as part of the capital of such association; and, third, that the comptroller of the currency, by his certificate specifying the amount of such increase of capital stock, shall approve thereof, and certify to the fact of its payment."

A case might possibly arise where a subscriber for new stock would be estopped from asserting, as against a creditor of a national bank, that he was not a stockholder, even though the provisions of the statute had not been strictly followed; but we are not called upon at present to deal with a case of that character. The answer filed in the suit at bar does not disclose a state of facts that is sufficient to create an estoppel. It shows affirmatively, as we think, that while certain preliminary steps had been taken, by the requisite number of shareholders, to increase the stock of the defendant

bank from $100,000 to $200,000, yet that the comptroller of the currency had refused to consent to an increase of capital stock in excess of $50,000; that the latter amount of new capital had not been paid in when the bank failed; and that no certificate had been issued by the comptroller declaring an increase of capital stock and certifying to the fact of payment. Moreover, the complaint averred, in legal effect (and the allegation in that respect was not denied), that the money paid by the plaintiffs on account of their several subscriptions was so paid in pursuance of an express agreement that it should be held in trust and applied in payment of their several stock subscriptions when the full amount of their respective subscriptions had been paid in, and when the comptroller of the currency had duly issued his certificate declaring an increase of capital. Under these circumstances, we think that the answer filed by the defendants failed to show that the plaintiffs were stockholders of the defendant bank to the amount of their several subscriptions, or that, at the time of its failure, the stock thereof had been lawfully increased to the amount of $50,000 or to any other amount. It results from this view that the circuit court erred in overruling the demurrer to the answer. Its judgment is accordingly reversed, and the case is remanded to the circuit court, with directions to grant a new trial.