## MANUFACTURERS' PAPER CO. et al. v. ALLEN–HIGGINS CO.

(Circuit Court, D. Massachusetts. July 8, 1907.)

No. 237.

CORPORATIONS—INSOLVENCY—CREDITORS OR STOCKHOLDERS—ESTOPPEL TO PRESENT CLAIM.

A corporation being indebted to certain banks to the amount of $40,000, and being unable to secure more funds, a contract or reorganization was made between the corporation and the banks, by which it was agreed that claimants, three of the directors of the corporation, should take up $40,000 of the notes held by the banks, and that in consideration thereof the corporation should issue to them preferred stock for such amount, and that a trust company, having succeeded to the rights of one of the banks, should then advance on the corporation's demand notes and receiveables amounts not exceeding $50,000, and that until the advances of the trust company were repaid the banks would not press for payment of the company's indebtedness. This arrangement was completed. The preferred stock was issued and voted. The trust company advanced further funds, and other creditors became such on the faith of the reorganization, but the preferred stock issued was invalid for failure to comply with Acts Mass. 1903, p. 427, c. 437, § 14, requiring the filing of a certificate of such issue within 30 days after it was made. *Held*, that it was the duty of the claimants under the agreement to see that the stock was legally issued, and that they were estopped after the failure of the corporation to claim that they were creditors to the amount of the claim so paid, and not stockholders.

Storey, Thorndike, Palmer & Thayer, for plaintiff.
Charles E. Shattuck, for defendant.
George S. Taft and John M. Thayer, for creditors.
George S. Dewey, for Graton and others.
Frank Bulkeley Smith, for Worcester Trust Company and others.

COLT, Circuit Judge. Upon a creditors' bill brought by these complainants, a receiver was appointed of the Allen-Higgins Company, defendant. Shortly afterwards Henry C. Graton, John C. MacInnes, and Albert W. Gifford filed claims aggregating $40,000 against the defendant, which were disallowed by the receiver. The case was then sent to a master to hear the evidence and to report upon the question whether the claimants were entitled to be included as creditors of the defendant and to participate in the distribution of the assets. The master disallowed the claims, and the case is now before the court on exceptions to the master's report.

The report is as follows:

"All of the facts upon which my findings are based were agreed and submitted in the form of an agreed statement of facts, with certain exhibits attached thereto.

"This agreed statement of facts, with the exhibits attached, is filed herewith, and, in so far as may be, is made a part hereof.

"An examination of the facts shows that on November 25, 1903, the three claimants were stockholders and directors of the Allen-Higgins Company. In

the fall of 1903 the company was in great need of money with which to carry on its business. The Citizens' National Bank of Worcester had discounted all the notes of the company with the exception of notes on which the three claimants were accommodation indorsers to the amount of $40,000 hereinafter mentioned, and notes to the amount of $7,000 held by the Quinsigamond National Bank. The first-named bank had gone into liquidation, transferring its business to the Worcester Safe Deposit & Trust Company. Neither the trust company nor the Quinsigamond National Bank were willing to further discount the notes of the company. Under these circumstances, to obtain the money required for operating expenses, an agreement, dated November 25, 1903, was entered into. This agreement, which is set forth in full in the agreed statement of facts, provided that Graton, MacInnes, and Gifford should pay and take up the $40,000 of notes above mentioned, and that in consideration thereof the company should issue to them its preferred stock at par to the amount of $40,000; that the trust company should advance upon the demand notes and receivables of the company amounts not exceeding a total of $50,000; and that, until the advances of the trust company were fully repaid, the two banks would not press for payment of the company's indebtedness to them.

"The agreement, if carried out, would supply the company with ready money with which to carry on its business without materially increasing its pecuniary liabilities. It was hoped that the money thus provided would enable the company to eventually meet all its obligations.

"In pursuance of the agreement, the Worcester Safe Deposit & Trust Company loaned the Allen-Higgins Company various sums of money, and the liquidating agents of the Citizens' National Bank and the Quinsigamond National Bank continued to hold obligations of the Allen-Higgins Company, and did not press for payment thereof, and the three claimants, Graton, Gifford, and MacInnes, advanced and paid for the company the $40,000 of notes above mentioned.

"One year later, on November 25, 1904, $40,000 of first or special preferred stock was authorized by the stockholders of the Allen-Higgins Company to be issued to the said Graton, Gifford, and MacInnes in payment of the company's indebtedness to them arising from their having paid the said $40,000 of notes. Certificates for this stock were prepared and issued to the three claimants as follows: 134 shares to Graton, 133 shares to Gifford, and 133 shares to MacInnes.

"At the same meeting at which the new stock was authorized, a new board of directors was elected, a majority of which board consisted of officers of or of persons representing the Worcester Safe Deposit & Trust Company. Gifford and MacInnes were re-elected directors, but Graton, who had been a director up to that time, ceased to be an officer of the company.

"The Allen-Higgins Company was a Massachusetts corporation, and in order to properly issue the $40,000 of stock authorized as above it was necessary to comply with section 14 of chapter 437, page 427, of the Acts of the Massachusetts Legislature of 1903. This statute provides, amongst other things, as follows:

"'Stock may be issued subsequent to the issue of stock certified by the articles of organization if a certificate is prepared within thirty days after the date when the issue of such additional stock has been authorized, and is signed and sworn to by the president, treasurer and a majority of the directors. * * * No issue of stock subsequent to the issue of stock certified by the articles of organization shall be lawful until said certificate shall have been filed in the office of the Secretary of the Commonwealth as aforesaid.'

"The provisions of the statute were not complied with by the company, in that no certificate was prepared and filed as required, and I therefore find that the $40,000 of first preferred stock held by the claimants has never been legally issued and is void.

"On March 8, 1906. a receiver was appointed for the company, and shortly thereafter the three claimants filed proofs of claims with the receiver aggregating $40,000. alleging that they had paid notes of the company, on which they were accommodation indorsers, amounting to $40,000, and surrendering

or offering to surrender the invalid certificates with which the company had attempted to pay them.

"The question to be decided is 'whether or not they are now entitled to be included as creditors of the company and participate in the distribution of assets.

"As between the company and the claimants, the latter would clearly be entitled either to rescind the agreement of November 25, 1903, and recover back the money which they had paid on the company's account or recover the value of the stock in an action of damages, provided the rights of third persons were not imperiled.

"It was claimed by the claimants that the letters shown as Exhibits 2 and 3, attached to the agreed statement of facts, constituted a new agreement, taking the place of the agreement of November 25, 1903. I am not able to come to this conclusion. The letters extended or enlarged the November 25th agreement, but did not annul it.

"It was the duty of the claimants, as parties to the agreement of November 25th, an agreement devised in their interests, to see to it that the stock issued in the furtherance thereof was legally issued, not merely to protect their own interests, but especially to protect the interests of those who, relying upon them, advanced money or gave credit to the company or forebore to press for payment of the company's obligations. The facts with the exhibits show that obligations were incurred to the Worcester Trust Company, renewals and extensions obtained from the Citizens' National and Quinsigamond National Banks, and merchandise indebtedness incurred on the basis of the cancellation of the $40,000 of notes by the claimants and the issue to them of first preferred stock to the amount of $40,000.

"In May, 1905, a full report of the finances of the company was submitted to the stockholders, in which report the conversion of $40,000 of indebtedness into special preferred stock was set out. This report was signed by the claimants Gifford and MacInnes and the other directors. At the stockholders' meeting called to consider the report 'all three claimants took part, and a committee of five was appointed from the stockholders to consider and report on the condition of the company and the best plan of procedure. Graton and Gifford were members of this committee. On January 1, 1906, the committee reported. In the meantime, on July 17, 1905, the company filed its annual certificate of condition with the commissioner of corporations, signed by four directors, but by no one of the claimants, showing the $40,000 increase of its capital stock. This was the only public certificate filed in which reference was made to the $40,000 preferred stock. On February 2, 1906, a special meeting of stockholders was called, and each stockholder was furnished with a printed statement of the condition of the company in which the $40,000 of first preferred stock was set out as one of the capital liabilities. On February 20, 1906, a meeting of the stockholders were held in pursuance of the call of February 2d, and all three claimants were present in person or by proxy, and all three voted on their first preferred stock.

"The company was placed in the hands of the receiver on March 8, 1906. No one of the claimants had actual knowledge of the irregularities in the issue of the first preferred stock until about the time of the receivership.

"On May 10, 1906, the assets of the company were sold at public auction under decree of this court for a sum not sufficient to pay the indebtedness of the company.

"At no time prior to the appointment of the receiver did either of the claimants make any claim inconsistent with their position as first preferred stockholders; but, on the contrary, they held themselves out to be the owners of the first preferred stock legally issued in accordance with the agreement of November 25, 1903. Relying thereon, the two national banks forebore to press their claims, the trust company advanced large sums of money, and other indebtedness was incurred. The claimants now seek to obtain, at the expense of the creditors of the company, an advantage which they would not have had had the statutory requirements been complied with at the time the stock was issued, or, in other words, to place themselves in a better position than the one which they voluntarily assumed when they entered into the agreement of November 25, 1903, by taking advantage of what appears to have

been inadvertence or carelessness on their own part as well as on the part of the company's officers.

"I rule that they are stopped from so doing, and find that their claims were properly disallowed by the receiver."

## The agreement of November 25, 1903, reads as follows:

"Agreement for the reorganization of the Allen-Higgins Company, dated November 25, 1903, by and between the Citizens' National Bank, the Quinsigamond National Bank, the Worcester Safe Deposit & Trust Company, John C. MacInnes, Henry C. Graton, A. W. Gifford and other stockholders and directors of the Allen-Higgins Company.

"First. The Citizens' National Bank and the Quinsigamond National Bank, the holders of certain obligations of said Allen-Higgins Company, including an obligation evidenced by bonds of the par value of thirty-five thousand ($35,000) dollars secured by a first mortgage on the property of said Allen-Higgins Company, in consideration of the promises herein contained of the other parties to this agreement, agree to hold their obligations, notes, bonds and claims and not without the consent of the Worcester Safe Deposit & Trust Company in any way to attempt the enforcement or collection of the same or the foreclosure of said mortgage until the sums advanced to said Allen-Higgins Company by the Worcester Safe Deposit & Trust Company, under the provisions hereof, are paid in full; to the end that the claims of said trust company for said advances shall be a first charge on the whole property of said Allen-Higgins Company precedent to said mortgage and entitled to priority over said bank's claims.

"Provided, however, that when said advances for moneys loaned as provided herein by the Worcester Safe Deposit & Trust Company to said Allen-Higgins Company are paid in full, then the rights of said Citizens' National Bank and the Quinsigamond National Bank in respect to their said obligations are restored and of effect as if this agreement had not been made. But until the repayment to said Worcester Safe Deposit & Trust Company of the sums of money advanced hereunder, the said Citizens' National Bank and Quinsigamond National Bank agree that the claim of said Worcester Safe Deposit & Trust Company shall be preferred over their claims, whether secured or unsecured, and paid in full, either out of the income of said Allen-Higgins Company, or, in case of liquidation, out of its assets.

"Second. Said MacInnes, Graton, and Gifford, being the indorsers upon forty thousand ($40,000) dollars of the notes of said Allen-Higgins Company, agree to pay and take up said notes and to receive from said Allen-Higgins Company in exchange therefor forty thousand ($40,000) dollars in the preferred stock of said Allen-Higgins Company, to be issued as hereinafter provided.

"Third. The Allen-Higgins Company agrees to issue four hundred (400) new shares of its preferred stock of the par value of one hundred ($100) dollars each to said MacInnes, Graton, and Gifford in exchange for the notes of said company for a like amount. And the stockholders of said company, parties hereto, agree to cause to be issued said stock and do hereby irrevocably constitute and appoint Chandler Bullock, Esq., or George A. Smith, or both, our attorneys to represent us at any meeting of the stockholders of said company to be called to carry into effect this provision.

"Fourth. The Worcester Safe Deposit & Trust Company agrees that it will loan to said Allen-Higgins Company a sum not exceeding fifty thousand ($50,000) dollars upon the demand notes of said company and upon said company's receivables, provided, however, that said loans and any renewals thereof or substitutions therefor to said Allen-Higgins Company are and become an absolute first claim, exclusive of merchandise and labor indebtedness against the assets of said corporation as herein provided.

"Fifth. The said Allen-Higgins Company and its officers and directors herein covenant and agree with the other parties to this agreement that the bonded mortgage indebtedness outstanding against said Allen-Higgins Company does not exceed the sum of thirty-five thousand ($35,000) dollars, and that the other debts and obligations of said company, exclusive of said bonded mortgage indebtedness, do not exceed $175,000.00. And said directors and stock-

holders, parties hereto, further agree with the other parties to this agreement that no dividends upon any of the capital stock of said company, outstanding or to be issued, shall be paid until the repayment to the Worcester Safe Deposit & Trust Company of its loans made under the provisions of this agreement to said Allen-Higgins Company. And they do further agree to deposit with the Worcester Safe Deposit & Trust Company of said Worcester, their stock in said Allen-Higgins Company, granting to said trust company full power and authority to represent them and to vote said stock at any and all meetings of said corporation until said repayment to the Worcester Safe Deposit & Trust Company.

"And said MacInnes, Graton, Gifford, and Chandler Bullock furthermore agree, if said trust company desire to remain on the board of directors of said corporation.

"Sixth. These agreements are mutually dependent one upon the other.

"Seventh. The Worcester Safe Deposit & Trust Company, pledgee of the claims, collateral, and securities of the Citizens' National Bank of Worcester, at the request of said bank, hereby assents to and accepts the terms and provisions of the foregoing agreements."

It is only necessary to consider the claimants' first, fifth, and sixth exceptions:

"(1) They except to the finding in paragraph 3, on page 4 of report, that it was the duty of the claimants, as parties to the agreement of November 25th, an agreement devised in their interest, to see to it that the stock issued in the furtherance thereof was legally issued, not merely to protect their own interests, but especially to protect the interest of those who, relying upon them, advanced money or gave credit to the company or forebore to press for payment of the company's obligations."

"(5) They except to the finding in the next clause in the same paragraph, that 'the claimants now seek * * * to place themselves in a better position than the one which they voluntarily assumed when they entered into the agreement of November 25, 1903, by taking advantage of what appears to have been inadvertence or carelessness on their own part.'

"(6) They except to the finding in the last paragraph of the report, the ruling that they are estopped from so doing, and the finding that their claims were properly disallowed by the receiver."

Upon full consideration of the facts presented in this record, I agree with the findings of the master: First, that it was the duty of the claimants under the agreement of November 25, 1903, to see that the stock was legally issued; second, that the claimants cannot now, after the banks have in good faith carried out the agreement, take advantage of what appears to have been their own inadvertence or carelessness, and thereby place themselves in a better position; and, third, that the claimants are now estopped from so doing, and that therefore their claims were properly disallowed by the receiver.

If the power had been absolutely wanting in the defendant company to issue this stock under the laws of Massachusetts, the case might have assumed a different aspect. Scovill v. Thayer, 105 U. S. 143, 149, 26 L. Ed. 968. But here the increase was within the power of the corporation, and the irregularity was simply in the steps taken to effect the increase as provided by law. Scott v. Deweese, 181 U. S. 202, 21 Sup. Ct. 585, 45 L. Ed. 822; Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, 35 L. Ed. 227; Pullman v. Upton, 96 U. S. 328, 24 L. Ed. 818; Chubb v. Upton, 95 U. S. 665, 24 L. Ed. 523; and Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203. Under the rule laid down in these cases, the claimants are clearly estopped from now set-

ting up the invalidity of the stock in question as against the creditors of the defendant company. This conclusion renders it unnecessary to consider the exceptions of the Worcester Trust Company.

The claimants' exceptions to the master's report are overruled.