## CLARK v. HAMILTON.

(Circuit Court of Appeals, Eighth Circuit.  October 12, 1914.)

No. 4134.

*(Syllabus by the Court.)*

BANKRUPTCY (§ 314*)—CREDITOR OF BANKRUPT CORPORATION—MONEY LOANED
—STOCK ISSUE.

One who subscribes $5,000 in full payment for $10,000 par value of the
contemplated fully paid increase of the stock of a corporation, pays the
$5,000, and obtains the promissory note of the corporation to his trustee
for that amount before the corporation has authorized the increase, on
the condition, clearly expressed in the contract of subscription, that the
$5,000 shall be treated as a loan to the corporation drawing interest at
6 per cent. until the corporation is ready to issue the fully paid stock of
the par value of $10,000, becomes thereby the creditor of the corporation,
and when the corporation never issues, or takes any steps to issue, the
increase of stock, because it cannot legally issue it for a payment of 50
cents on a dollar without making the taker liable to pay another 50
cents on the dollar therefor, and is adjudged a bankrupt, he remains a
creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478,
483–487, 489, 490; Dec. Dig. § 314.*]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

A claim of Claude Hamilton against the estate of the Smith Automobile Company, a bankrupt, was allowed by the District Court, and F. B. Clark, trustee in bankruptcy of the bankrupt company, appeals. Affirmed.

The trustee in bankruptcy of the estate of the Smith Automobile Company, a corporation of the state of Missouri, appeals from an order of the District Court directing the allowance of the claim of Claude Hamilton as a general creditor for $5,000 and interest. The issue presented is whether Hamilton should be treated as a creditor or as a stockholder of the Smith Company. The material facts that determine the answer are these:

The Smith Company in the winter of 1909 owned a plant at Topeka, Kan., where it was making and selling automobiles. It had an issued capital stock of $181,000, of which L. Anton Smith owned about $60,000 and Walter L. Smith $49,000. In December, 1909, the corporation was in financial difficulty, and Walter L. Smith offered to sell to citizens of Grand Rapids, Mich., $50,000 of the stock of L. Anton Smith for $25,000 and to put his own stock in the name and control of a trustee, so that the Grand Rapids parties would have control of a majority of the stock and of the corporation. The latter parties appointed O. H. L. Wernicke, E. D. Conger, and A. C. Denison a committee to represent and act for them. After the plant and property of the corporation had been examined by the Grand Rapids parties, this committee made a contract with Walter L. Smith, evidenced by two writings made and signed at the same time, on or about January 1, 1910, wherein they recited that a group of Grand Rapids citizens contemplated providing the necessary additional capital "to relieve the corporation from its distressing financial situation and assuming, so far as may be desirable, control of the corporation," that this group had underwritten a proposition to raise $100,000 new capital, that this group was "the new stockholders" in the agreement, that the purchase of the $50,000 stock of L. Anton Smith "by the new stockholders is perfected" simultaneously herewith, and that "the new stockholders" were represented by Messrs. Wernicke, Conger, and Denison, who should execute the contract on behalf of such group. By the terms of the contract this committee agreed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for these new stockholders that they would buy $50,000 of the stock of L. Anton Smith and pay $25,000 therefor, that they would proceed as rapidly as possible to obtain subscriptions for $100,000 in cash of new capital for the company in addition to the purchase price of the L. Anton Smith stock, that such steps should be taken that the subscribers for this new capital should "participate in the corporation on the same basis as those who purchase the L. Anton Smith series B stock at the agreed price 50 cents on the dollar," that within 10 days "the new stockholders," who had perfected the purchase of L. Anton Smith's stock and who were represented by their committee, would furnish $10,000, within 30 days $15,000 more, and the further sum of $25,000 within 90 days, that the remainder of the $100,000 new capital should be fully subscribed on or before June 1, 1910, and that "so far as such new capital is furnished to the corporation at dates before new stock is ready to be issued to the new stockholders therefor, such fund shall be, for the time being, evidenced by the notes of the corporation and shall be debts of the corporation, but, within the time here limited, such debts shall either be paid by the corporation out of the new capital furnished, or the new stockholders shall cancel the same pro rata in exchange for their new stock." Walter L. Smith agreed to sell and cause to be conveyed $50,000 par value of L. Anton Smith's stock for $25,000, to cause this stock and further stock to the amount of $60,000 par value to be surrendered and transferred to Arthur C. Denison, a trustee, to hold and vote this stock for the purpose of performing the contract, and that he (Walter L. Smith) would cause four (a majority) of the directors of the corporation, to resign, would transfer one share of stock to each of four persons to be specified by the Grand Rapids group, and would cause these persons to be chosen as directors in place of those who should resign. Walter L. Smith performed his part of this contract, and the new stockholders paid L. Anton Smith $25,000 for his $50,000 stock by January 8, 1910. The corporation was placed in their control by the change of directors and the transfer of a majority of its stock to Denison, their trustee, and Wernicke was made its president and Conger its treasurer.

·Claude Hamilton was not one of "the new stockholders" who purchased the stock of L. Anton Smith, was not a party to the contract and writings between them and Walter L. Smith, and the record fails to show that he had any knowledge or notice of their terms. But some time after the foregoing contract was made, and after the new stockholders had taken over the control of the corporation, he signed a written subscription for $10,000 additional stock of the corporation, and paid to E. D. Conger, as trustee for him and other subscribers, $5,000, and Conger, as such trustee, loaned this money to the corporation and took its promissory note for it to himself as trustee. The subscription contract which Hamilton signed provided that the subscriptions were made on these terms: "A group of Grand Rapids men have taken over the control of the Smith Automobile Company and have underwritten an agreement that $50,000 of its present $200,000 series B stock shall be taken at 50 cents on the dollar. The stock will be ready for issue about March 15th. It is to be issued at this price as fully paid, to put the new stockholders in the same position as the present stockholders. Stock payments made before the new stock is ready for issue shall be treated in the meantime as loans to the company drawing interest at six (6) per cent. Subscriptions are now requested for the entire amount of $250,000 par value. * * * The underwriters will subscribe on the same basis as others, and their subscriptions will be, as far as they extend, in substitution for that underwriting liability." E. D. Conger, by common consent of the subscribers, and perhaps formally at one of their meetings, was made and acted as a trustee for the subscribers, to receive their subscriptions and use them as loans to the company until the new stock was issued, and, as the subscribers paid, he loaned their money to the company and took notes for it to himself as such trustee. They paid in about $73,000, and he took and still holds such notes for about that amount. Before the time came to issue the new stock the officers of the company ascertained that under the Constitution and laws of Missouri subscribers who took new stock from the corporation as fully paid when they actually paid only 50 cents on the dollar for it would be liable to pay as much more. The corporation never took the requisite legal steps to issue any increase of stock,

such as passing a resolution of its stockholders to increase it, publishing the record of such meeting, and paying the fee of the state therefor (Ann. St. Mo. 1906, §§ 1328, 1329, 956), and never issued any additional stock. Hamilton claimed, and the court below held, that he never became a stockholder.

W. S. McClintock, of Topeka, Kan. (D. W. Mulvane, C. E. Gault, D. R. Hite, and A. L. Quant, all of Topeka, Kan., on the brief), for appellant.

Hugh E. Wilson and Edgar H. Johnson, both of Grand Rapids, Mich. (Charles M. Wilson, of Grand Rapids, Mich., on the brief), for appellee.

Before SANBORN, Circuit Judge, and TRIEBER and REED, District Judges.

SANBORN, Circuit Judge (after stating the facts as above). The first position taken by counsel for appellants to support their claim that Hamilton became a stockholder, and not a creditor, of the Smith Company, is that the claim of the defendant is founded on notes issued pursuant to the contract of January 1, 1910, and is conditioned by the terms of that agreement, and they argue that the fact that Wernicke, who, as president of the company, executed its notes to Conger as trustee for the paying subscribers, was, as was Conger also, a member of the committee who made that contract on behalf of "the new stockholders" who purchased Smith's $50,000 of stock, sustains this view. But this contention disregards the plain facts of the case and the true relations of the parties. Hamilton was not one of "the new stockholders," who purchased Smith's stock and were represented by their committee, nor was he a party to the contract of January 1, 1910. He was a mere subscriber to a proposed increase of the capital stock of an old corporation. He dealt with that corporation at arm's length, a party adverse to it, when he made and acted under his contract of subscription, and the terms of that contract and of no other govern his rights. He made that contract after the contract of January 1, 1910, had been made, and after the part of it relating to the purchase of L. Anton Smith's stock and of the control of the corporation had been performed. He was neither a party to it, nor was he represented by the committee who made it, nor did he know its terms, and it does not condition, determine, or measure the rights or liabilities of either Hamilton, the corporation, or its creditors arising from his subscription and his payment thereon. Hamilton acted for himself, and never had any representative or agent in the transactions involved in this suit, except Conger, and the extent of his power to represent him was to loan his money to the corporation when he paid it on his subscription, and to take a promissory note of the corporation to himself as trustee for Hamilton, in accordance with the terms of his subscription contract.

The second contention is that the payments of the Grand Rapids parties to Conger were intended by them as contributions to capital and not as loans—and it rests on the contract of January 1, 1910, and fails to distinguish between the situation of "the new stockholders," who purchased the Smith stock and were represented by the committee

who made that contract for them, and a subscriber to the stock after that agreement had been made and partly performed. It is not persuasive.

. It is next argued that, as against creditors, the Grand Rapids parties occupy the position of stockholders of the corporation, because the underwriters, the new stockholders, who controlled the corporation, had the power to comply with the requirements of the statutes of Missouri, and to increase and issue the stock, and because a certificate of stock is not indispensable to the creation of the relation of a stockholder. But Hamilton was not one of the new stockholders. He had no control over, or vote or influence on, the management of the corporation; nor had he any representative who had any power to act for him in directing its course. That corporation and all the parties in control of it were adverse parties to him in the contract of subscription which measured his relation to them.

It is true that where one subscribes for stock in a corporation unconditionally, and the contract of subscription is substantially performed, and he either takes his place and acts as a stockholder, or receives dividends or benefits as such, he may be estopped as against creditors from denying that he is a stockholder, although a certificate of stock has not been issued to him, or some formal prerequisite, such as publishing or recording the vote authorizing the issue of additional stock, has not been complied with. Stutz v. Handley (C. C.) 41 Fed. 531, 538, 540; Pacific National Bank v. Eaton, 141 U. S. 227, 233, 11 Sup. Ct. 984, 35 L. Ed. 702; Hawley v. Upton, 102 U. S. 314, 26 L. Ed. 179; Manufacturers' Paper Co. v. Allen-Higgins Co. (C. C.) 154 Fed. 906. But Hamilton never subscribed for stock unconditionally. He made a plain written contract that he would temporarily loan to the Smith Company $5,000, and that, on condition that the company would issue and deliver to him valid full-paid increased stock of the par value of $10,000, he would accept it in payment of his loan and become a stockholder. Neither the company nor the underwriters ever caused the other $5,000 required to purchase $10,000 of full-paid increased stock to be paid for it; neither took any legal steps to cause any increased stock to be issued, and Hamilton's loan, evidenced by the promissory note of the corporation to his trustee, Conger, remained unpaid, and he remained what he was from the beginning, a creditor of the corporation. He is not estopped from holding this position and enforcing his claim as a creditor as against other creditors of the corporation, because he never said, did, or omitted anything which tended to deceive them into the belief that he was other than a creditor, and there is no eveidence that any of them was induced by any representation, act, or neglect of Hamilton to change his position in reliance upon any such belief. His relation of creditor was evidenced by his written subscription contract and by the corporation's promissory note to his trustee, and he made no representation that these did not disclose his true relation to the corporation. The other creditors of the corporation have no greater rights than the corporation here. Hamilton was a creditor of the corporation when it received his $5,-000, and he is a creditor still. One who subscribes $5,000 in full pay-

ment for $10,000 par value of the contemplated fully paid increase of the stock of a corporation, pays the $5,000, and obtains the promissory note of the corporation to his trustee for that amount before the corporation has authorized the increase, on the condition, clearly expressed in the contract subscribed, that the $5,000 shall be treated as a loan to the company drawing interest at 6 per cent. until the corporation is ready to issue the fully paid stock of the par value of $10,000, becomes thereby the creditor of the corporation, and when the corporation never issues or takes any steps to issue the increase of stock, because it cannot legally issue it for a payment of 50 cents on the dollar, without making the taker liable to pay another 50 cents on the dollar therefor, and is adjudged a bankrupt, he remains a creditor. McFarlin v. First National Bank of Kansas City, 68 Fed. 868, 871, 16 C. C. A. 46; Winters v. Armstrong (C. C.) 37 Fed. 508, 515; Bircher v. Walther, 163 Mo. 461, 63 S. W. 691; Mathews v. Columbia National Bank (C. C.) 77 Fed. 372, 373; Wolf v. Chicago Sign Printing Co., 233 Ill. 501, 84 N. E. 614, 13 Ann. Cas. 369.

Other objections to this conclusion, which have not escaped consideration, are: (1) That Wernicke about January 11, 1910, advertised that new capital to the amount of $100,000 had been subscribed; but Hamilton was not represented by Wernicke, or estopped by any action, representation, or omission of Wernicke, Conger, or any of the other new stockholders or parties in control of the corporation with regard to the issue of the increase of the stock or the subscription for it. (2) That the amounts paid by Hamilton and other subscribers were embarked in the corporation business, augmented its capital, and increased its credit, and therefore these subscribers became liable as stockholders for its debts. The evidence fails to convince that the amounts so advanced increased its capital, and if they increased its credit and were embarked in its business they only took the usual course and had the ordinary effect of moneys loaned to failing debtors, and these facts cannot be permitted to transform creditors into debtors or stockholders in violation of the terms of written agreements which clearly fix their situation. (3) That only about $48,000 out of the $73,000 paid in by the subscribers, and evidenced by the notes of the corporation given to Conger, their trustee, therefor, was received by the corporation; but the other $25,000 was paid for the $50,000 stock of L. Anton Smith, and that the subscriptions were for the purchase of the Smith stock as well as for the increase of stock. But Hamilton paid his full $5,000 to Conger, his trustee, and his trustee delivered it to the corporation and took that company's promissory note for it. If that corporation expended any part or all of it for the purchase of the Smith stock, and this is not clearly proved, that is no defense to the claim of Hamilton, for the corporation never delivered or offered to issue or deliver to him any of the stock purchased from Smith, or any other stock, and it received full consideration, the entire $5,000, for the claim of Hamilton, and he is neither liable nor accountable for the use the corporation made of the cash he paid it. (4) That the contract of January 1, 1910, between Walter L. Smith and the committee of the new stockholders provided that the $100,000 of new capital

should be subscribed by June 1, 1910, and that the notes given by the corporation should be paid out of such new capital. And (5) that the corporation has a claim against "the new stockholders," the underwriting committee, for their failure to procure the subscriptions for $100,000 and to take the necessary steps to cause the corporation to issue the contemplated increase of stock, which should be set off against the claim of Hamilton, because Conger, his trustee, who took the notes for him and the other subscribers, was one of the new stockholders, one of their committee, and one of the underwriters. But the limit of Conger's authority and liability as trustee for Hamilton and the other subscribers was to take the notes of the corporation for their benefit for the amounts they paid on their subscriptions. This he faithfully did. Hamilton and other subscribers under similar circumstances were in no way liable for the claims of the corporation against the new stockholders, their committee, the underwriters, or Conger as a member of or trustee or agent of them, and no claim against any of them constitutes a set-off against the claim of Hamilton against the corporation for his $5,000 and interest.

The order of the District Court that the claim of Hamilton be allowed as a general claim against the estate of the Smith Company, the bankrupt, was legal and righteous; and it is affirmed.