Coyle, Appellant, vs. Franklin State Bank and State Banking Commission, Respondents.

*December 6, 1933—January 9, 1934.*

602

For the appellant there was a brief by *Wheeler & Witte* of Milwaukee, and oral argument by *Lyman G. Wheeler*.

*George A. Affeldt* of Milwaukee, for the respondents.

ROSENBERRY, C. J.    State banks are organized under ch. 221, Stats. of Wisconsin.    Sec. 221.03 prescribes what the articles of incorporation shall contain, among other things that the amount of the capital stock shall be stated. By sec. 221.12 it is provided that a bank may amend its articles of association in any manner at any time by a vote of its stockholders and prescribes how the amendment shall be certified and filed, and further provides: "No increase of the capital shall be valid until the amount thereof has been subscribed and actually paid in."    Plaintiff contends that having subscribed for fifteen shares of the additional issue of 2,500 shares, in view of the fact that only 1,842 shares were subscribed for, the attempted increase in the capital stock of the bank is invalid because of the provision of the statute above quoted.    The whole amount of the increase not having been subscribed and actually paid in, the solution of this question requires us to examine and interpret that part of the statute, sec. 221.12 quoted above.    The clause in question was introduced into the law of this state

by the enactment of ch. 234 of the Laws of 1903. It then read:

"Unless the required surplus will permit, no increase of capital shall be valid until the amount thereof has been subscribed and actually paid in."

It was amended by ch. 749 of the Laws of 1913 to read:

"No increase of the capital shall be valid until the amount thereof has been subscribed and actually paid in; provided that the entire surplus fund of a bank, or as much thereof as may be required, may be declared and paid out as a stock dividend, to apply on, and be converted into, such increase of capital."

Ch. 234 of the Laws of 1903 was a general banking act which followed the repeal of original secs. 4 and 5 of art. XI of the constitution of this state. The provision in question was no doubt derived in part at least from sec. 5142 of the Revised Statutes of the United States, which at the time ch. 234 was enacted, read as follows:

"But the maximum of such increase to be provided in the articles of association shall be determined by the comptroller of the currency; and no increase of capital shall be valid until the whole amount of such increase is paid in, and notice thereof has been transmitted to the comptroller of the currency, and his certificate obtained," etc.

While ch. 234 in part adopted the language of sec. 5142, it did not adopt the theory upon which sec. 5142 was based. There is no state officer who has powers such as are conferred upon the comptroller of the currency. When a national bank increases its capital stock and the comptroller of the currency has issued his certificate specifying the amount of the increase, his approval thereof, and that it has been duly paid in as part of the capital, that certificate may not be collaterally attacked and it is in practical effect conclusive. *Tillinghast v. Bailey,* 86 Fed. 46; *Brown v. Tillinghast,* 93 Fed. 326; *Bailey v. Tillinghast,* 99 Fed. 801 (1900).

The fact that the comptroller's certificate is conclusive must be borne in mind in considering cases arising under sec. 5142, R. S. However, the words "No increase of capital shall be valid," etc., have the same meaning in each section. This language had been construed in a number of cases arising in the federal courts prior to the enactment of ch. 234 of the Laws of 1903. At the time of the enactment of that chapter this language had a well understood and well defined meaning and it must be assumed that the words were used by the legislature in the sense which they had acquired in the law at that time.

*Delano v. Butler,* 118 U. S. 634, 7 Sup. Ct. 39, 30 Lawy. Ed. 260, was an action to enforce the personal liability of the defendant as a stockholder in a national bank under the provisions of sec. 5151, R. S. U. S. The defense was that $3,000 of the subscription represented part of an increase in the bank's capital; that as to that part the subscription could not be enforced because the attempted increase was invalid and contrary to law. It was held that the increase in the capital stock of the bank was valid although part of the proposed increase was not taken. This, however, was upon the ground that by subsequent action of the board of directors the amount of the increase was reduced to the amount actually subscribed and paid in and that the defendant was chargeable with the knowledge that such decrease in the authorized capital was within the power of the stockholders. The court said:

"Three things must concur to constitute a valid increase of the capital stock of a national banking association: first, that the association, in the mode pointed out in its articles, and not in excess of the maximum provided for by them, shall assent to an increased amount; second, that the whole amount of the proposed increase shall be paid in as part of the capital of such association; and third, that the comptroller of the currency, by his certificate specifying the amount of such increase of capital stock, shall approve thereof and certify to the fact of its payment."

Because there had been a failure to take these steps, it was held in *McFarlin v. First Nat. Bank,* 68 Fed. 868, that one who had subscribed to and paid in the amount of his subscription had not become a stockholder of the bank.

The case of *Scott v. Deweese,* 181 U. S. 202, 21 Sup. Ct. 585, was decided April 15, 1901, and is the last decision of the supreme court of the United States in which the language is construed prior to the enactment of ch. 234 of the Laws of 1903. In *Scott v. Deweese* the increase in the capital had been authorized by the stockholders. The comptroller of the currency had issued his certificate stating the amount of the increase; that the increase was approved, and that the increase had been duly paid in as part of the capital stock of the bank. When sued upon his subscription, the defendant alleged by way of defense that at the time of his subscription to the proposed increase the bank was insolvent; that the pretended increase of stock was never of any value or validity; that only about two-thirds of the increased stock was ever paid; that the officers of the bank made false entries in its books and records; that the whole transaction was a sham; that as soon as he discovered the increased stock was not fully paid, he disclaimed and denied that he was or ever had been a stockholder in the bank. Upon the trial it appeared, however, that Scott, in addition to subscribing and paying for the stock, had accepted a certificate, had exercised the right of a shareholder, and had been paid a dividend upon the stock. Discussing the language in the provision of the statute under consideration here, the court said:

"The primary object of the provision that 'no increase of capital shall be valid until the whole amount of such increase is paid in' was to prevent the 'watering' of stock, that is, prevent banking business being done upon the basis of an increased capital which did not in fact exist. If this prohibition be disregarded by a national bank, the conduct of its business could no doubt be controlled by the representatives of the government so far as might be necessary to compel obedience to the law. R. S. sec. 5205. But the

statute does not, in terms, make void a subscription or certificate of stock based upon increased capital stock actually paid in, simply because the whole amount of any proposed or authorized increase has not in fact been paid into the bank. . . . As between the bank and the defendant, the latter having paid the amount of his subscription for shares in the proposed increase of capital was entitled to all the rights of a shareholder, and therefore, as between himself and creditors of the bank, became a shareholder to the extent of the stock subscribed and paid for by him."

In deciding the question raised respecting the validity of the increase, the court placed its decision definitely upon its construction of the language of the statute although its decision might well have been rested upon other grounds. The court said:

"We concur with the circuit court of appeals in holding that under sec. 5142, as modified by the act of May 1, 1886, each subscription for portions of increased capital 'when paid up in full becomes valid and binding until the maximum is reached, and the statute does not incorporate into such subscriptions a condition that the subscriber paying his subscription in full cannot become a holder of valid stock unless the maximum amount of the proposed increase is subscribed and paid for.' If this be a sound view, as we think it is, it follows that one holding stock in a national bank which is so far valid as to entitle him to enjoy, and who is accorded the right to enjoy, the privileges of a shareholder, as against the bank, is a shareholder upon whom assessments may be made in conformity with sec. 5151." R. S. U. S.

It is true that in *Scott v. Deweese* the comptroller had issued his certificate in conformity with the federal statute. It was nevertheless urged that the increase was invalid because not fully paid for, so that the question decided by the court is precisely the question which is raised in this case, and that is, Does the increase become valid if and when the subscription is made and paid in or must the validity of a subscription wait the subscribing and full payment of the whole amount?

Under the law authorizing the incorporation of state banks in Wisconsin, the power to create shares is conferred upon the bank. Unless the bank proceeds in the manner prescribed by statute, it acquires no power to create shares. While a corporation may go through the form of issuing certificates of stock or shares, when these are issued beyond the amount authorized by law its act is without validity although certain legal consequences may be attached thereto. In the case of an increase in the capital stock of the corporation, it would seem to be elementary that, unless the corporation complies with the provisions of the statute, its power to issue shares would not be enlarged. There being no state officer having powers comparable to those of the comptroller of the currency, the question of whether or not there was a compliance with the statute becomes a judicial one, where the question is properly presented in a case. Under the law of this state, whether or not there has been a compliance is a question of fact. Curiously enough, while a reduction in the capital cannot take place until such reduction has been approved by the Commissioner of Banking, no such approval is required for an increase. Sec. 221.12.

We adopt the reasoning upon which the decision in *Scott v. Deweese, supra,* is based, and come to the conclusion that where the issue of stock has been authorized, a subscription made for the increase and the amount paid in, the power of the corporation to create shares is to that extent enlarged; that a contract of subscription made for stock, the issuance of which has been duly authorized, creates a valid and binding obligation upon the part of the subscriber and the same may be enforced in an appropriate action at law; that the power to create the shares so subscribed for arises when either voluntarily or upon compulsion the subscriber pays the amount into the bank's treasury. While we arrive at this conclusion mainly upon the authority of *Scott v. Deweese,* there are also other considerations which tend to support our determination. The section is quite evidently intended to

protect the interests of depositors. For that reason it in effect forbids a bank to hold out an authorized increase of stock as having taken place until it has been subscribed for and paid in. It was not intended for the benefit of subscribers to an increase in the capital stock of the bank. The subscriber is in a position to protect himself, which he may do by making his subscription in terms contingent upon the whole amount of the authorized increase being subscribed. Otherwise, as was pointed out in *Scott v. Deweese*, it would be practically impossible to get a valid increase because the whole increase could be defeated by the failure of a single subscriber to pay a subscription. Such a result is manifestly unreasonable and one not within the contemplation of the legislature. The authorized increase represents a maximum. The power of the corporation itself to increase its shares and for the increase to be valid under the statute takes place when and as the amount is paid in.

On behalf of the plaintiff it is contended that upon the facts found by the trial court to the effect that the agents of the bank represented to the plaintiff that the bank was in good standing and making money, whereas in truth and in fact, as the court found, said representations were untrue, accorded the plaintiff grounds for a rescission of the contract of subscription.

Plaintiff's contention raises a question which has not heretofore been determined by this court. However, there is no dearth of authority elsewhere. The English rule, which was laid down by Lord CAMPBELL in *Henderson v. Royal British Bank*, 7 El. & Bl. 356, is to the effect that a shareholder in a bank who had been induced by fraud to take shares, could not, after the bank was insolvent, repudiate the transaction on the ground that he had been defrauded and so escape liability to the creditors of the bank. This rule is followed to a greater or less extent in the United States and the states of Idaho, Illinois, Massachusetts, Mississippi, Oklahoma, Oregon, Pennsylvania, and Washington. By the greater

weight of authority the American cases hold that insolvency
alone does not in and of itself cut off the right of a de-
frauded stockholder to escape his liabilities as such, but that
his right to repudiate the transaction may be lost by laches,
estoppel, and other considerations of a somewhat similar na-
ture. The cases are collected, analyzed, and classified in an
extensive note entitled "Insolvency of corporation as barring
stockholder's right to rescind subscription on ground of
fraud." 41 A. L. R. 674. Under the title "Fraud inducing
subscription or purchase of stock as defense against stat-
utory superadded liability," see note and collection of cases,
51 A. L. R. 1203.

The trial court found fraud, laches in failing to discover
the true situation, and continuation of the relation by the
renewal of the note originally given; that the bank treated
the note as cash in hand; that on the strength of the plaint-
iff's subscription and the subscription of others procured at
about the same time, the bank had procured some $275,000
of new deposits distributed among 3,697 depositors, and
that considerable additional deposits had been made by older
depositors; the total amount of increase and new deposits
was the sum of $401,632.42; that the plaintiff took no steps
to disaffirm the transaction until he commenced this suit,
which was after the affairs of the bank had been placed in
the hands of the Banking Commission. The false repre-
sentation relied upon is that·the agents of the bank stated to
the plaintiff at the time he made the subscription that the
bank was making money. Plaintiff's subscription was dated
January 22, 1931, and the bank was placed in the hands of
the Commissioner of Banking on June 18, 1931. So far as
the time element is concerned, there was ample opportunity
for the plaintiff to ascertain the facts with respect to the con-
dition of the bank. He made no effort to do so. It appears
from the evidence that he had friends who were well in-
formed in regard to the bank's affairs but made no inquiry
of them, in fact did nothing. The trial court was of the

view that the fraud as a defense to the subscription was not available to the plaintiff under either the English or the so-called American rule, and in this view we concur. It must be borne in mind that whether we apply one rule or the other, the revoking stockholder must not be guilty of laches. Under the English rule he is concluded unless the repudiation is made before insolvency. Under the English rule if the stockholder has commenced proceedings before insolvency such proceeding will not be cut off by insolvency or winding-up proceeding. *Henderson v. Lacon,* L. R. 5 Eq. 249. See cases cited 41 A. L. R. 679. The matter is considered and the underlying considerations well stated in *Newton Nat. Bank v. Newbegin,* 74 Fed. 135. The court said in part:

"When a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion. If a considerable period of time has elapsed since the subscription was made; if the subscriber has actively participated in the management of the affairs of the corporation; if there has been any want of diligence on the part of the stockholder, either in discovering the alleged fraud, or in taking steps to rescind when the fraud was discovered; and, above all, if any considerable amount of corporate indebtedness has been created since the subscription was made, which is outstanding and unpaid,—in all of these cases the right to rescind should be denied, where the attempt is not made until the corporation becomes insolvent."

What constitutes due diligence in discovering the fraud and prompt action after its discovery will be determined upon the facts of each case. In this case the plaintiff took no part in the management and control of the bank's affairs. He had made himself liable upon a subscription in consideration of which he had given his note to the bank which was treated by the bank as an asset. He took no steps to disaffirm the transaction until after the bank was placed in

the hands of the Commissioner of Banking. The misrepresentation upon which he relies was one which admitted of prompt investigation. Whatever the situation would be if the bank were still a going concern, it is considered that the trial court applied the correct rule of law when it held that under the circumstances of this case the disaffirmance came too late.

*By the Court.*—Judgment affirmed.

For the appellant there was a brief by *Wheeler & Witte* of Milwaukee, and oral argument by *Lyman G. Wheeler.*
*George A. Affeldt* of Milwaukee, for the respondents.